Opinion
KENNARD, J.
In Westlake Community Hosp. v. Superior Court (1976) 17 Cal.3d 465, 484 [131 Cal.Rptr. 90, 551 P.2d 410], we held that unless a party to a quasi-judicial administrative agency proceeding challenges the adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions.
Does that holding apply to a city employee’s discrimination claims under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and under title VII of the federal Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.), when the employee fails to have the city’s final adverse finding judicially reviewed and set aside? The answer is “yes” as to claims under California’s FEHA but “no” as to claims under Title VII of the federal act.
We also hold that a trial court’s summary judgment based on the defense of laches must be reviewed de novo.
I.
Our account of the facts is taken from the record before the trial court when it granted defendant’s motion for summary judgment. (Flatt v. Superior Court (1994) 9 Cal.4th 275, 279 [36 Cal.Rptr.2d 537, 885 P.2d 950].) We review the trial court’s decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections *66 were made and sustained. (Code Civ. Proc., § 437c, subd. (c); Artiglio v. Coming Inc. (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313]; Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].)
From January 1991 through July 1993, plaintiff Barry Johnson was the assistant city manager for defendant City of Loma Linda (the City). In 1992, City Manager John Bernardi asked plaintiff to look into a complaint of sexual discrimination made by a female senior planner against community development director Dan Smith. After an investigation, plaintiff concluded the allegations were well founded and, on September 8, 1992, sent Smith a letter of intent to terminate his employment. Thereafter, Smith and the City entered into a settlement, and Smith was suspended for 30 working days.
In April 1993, City Manager Bernardi announced his resignation. Over the next several months, plaintiff’s authority over department heads was removed and his principal duties were reassigned.
In June 1993, Acting City Manager Peter Hills told plaintiff he was being laid off because of budgetary problems and his association with former City Manager Bernardi. Plaintiff’s employment with the City ended on July 15, 1993. That same day, plaintiff filed a grievance with the City. Four days later, on July 19, 1993, the city council voted to eliminate five positions, including plaintiff’s position as assistant city manager.
In September 1993, the City’s personnel board rejected plaintiff’s grievance, finding that the City had not violated any discrimination laws in discharging plaintiff, and that plaintiff’s job had been eliminated for economic reasons. On December 14, the city council upheld the board’s decision.
On December 22, 1993, plaintiff filed with the Department of Fair Employment and Housing (DFEH), a discrimination claim against the City, alleging his dismissal was in retaliation for opposing sexual harassment. On December 29, 1994, because his complaint had been on file for more than a year, the department gave plaintiff a “right to sue” letter.[1]
On July 14, 1995, plaintiff brought this action in superior court. The third amended complaint, the pleading at issue here, alleged causes of action for, *67 among others, discharge from employment in retaliation for opposing discriminatory practices in violation of Government Code section 12940, subdivision (f), part of the FEHA, and in violation of Title VII. Joined with plaintiff’s complaint was a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5, challenging the actions of the personnel board and the city council. Plaintiff sought reinstatement, backpay and benefits, as well as compensatory and punitive damages.
The superior court granted the City’s motion for summary judgment. The court ruled that the doctrine of laches barred plaintiff from pursuing his petition for writ of administrative mandate. And because plaintiff had failed to bring a timely judicial challenge to the administrative findings against him, the court concluded that plaintiff was bound by those findings.
The Court of Appeal reversed as to plaintiff’s Title VII claim, but in all other respects it affirmed the trial court’s judgment. It determined that the trial court did not abuse its discretion in ruling that the doctrine of laches barred consideration of plaintiff’s petition for a writ of administrative mandate. The Court of Appeal held that plaintiff’s failure to timely challenge the administrative finding by the City that his dismissal was for economic reasons barred his FEHA cause of action alleging that his termination was for discriminatory reasons. As to plaintiff’s Title VII claim, the Court of Appeal held that because the trial court’s laches ruling was not a final judgment on the merits for purposes of res judicata under California law, it was not binding as to the Title VII claim under the United States Supreme Court’s decision in University of Tennessee v. Elliott (1986) 478 U.S. 788 [106 S.Ct. 3220, 92 L.Ed.2d 635]. We granted plaintiff’s, as well as the City’s, petition for review.
II.
Asserting that the facts are undisputed, plaintiff argues that the Court of Appeal should have reviewed de novo the trial court’s determination that the defense of laches barred his petition for a writ of administrative mandate. Generally, a trial court’s laches ruling will be sustained on appeal if there is substantial evidence to support the ruling. (Miller v. Eisenhower Medical Center (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258].) Here, the trial court’s finding of laches was the basis for its order granting the City’s motion for summary judgment. Summary judgments are reviewed de *68 novo. (Ann M. v. Pacific Plaza Shopping Center, supra, 6 Cal.4th at pp. 673-674.) Thus, the Court of Appeal here erred in reviewing the matter under the deferential abuse of discretion standard.
We disagree, however, with plaintiff that the Court of Appeal erred in affirming the trial court’s laches ruling. “The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.” (Conti v. Board of Civil Service Commissioners (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617] (Conti), fns. omitted.) Review of a personnel decision of a public agency must be sought promptly. (Vernon Fire Fighters Assn. v. City of Vernon (1986) 178 Cal.App.3d 710, 719 [223 Cal.Rptr. 871].) As relevant here, the period of delay to be considered includes the time both before and after the filing of the petition for administrative mandate. (Conti, supra, at p. 357; Vernon Fire Fighters Assn. v. City of Vernon, supra, at p. 719.) Here, that delay exceeds three years.
Plaintiff waited more than 18 months before filing in the superior court his petition for writ of administrative mandate. He was notified on December 28, 1993, of the city council’s rejection of his internal administrative appeal. But he did not file his petition for administrative mandate with the superior court until July 14, 1995. We note that Code of Civil Procedure section 1094.6 requires that a petition for a writ of administrative mandate to obtain judicial review of a decision dismissing a city officer or employee be filed within 90 days of the date the decision becomes final if the city so notifies the employee. (Id., subds. (a), (b), (e), (f).) Although this statute is not applicable here because the City apparently did not notify plaintiff of the statutory 90-day period just mentioned, it underscores the significance of timeliness in challenging personnel decisions such as the one at issue here. Also, plaintiff failed to pursue his administrative mandate petition for more than 18 months after it was filed. He filed his petition in July 1995. Thereafter, he made no attempt to have the administrative mandate matter set for a court hearing. It was not until January 1997 that the superior court held a hearing on the City’s motion for summary judgment. Plaintiff’s delay of more than three years from the time the city council upheld the personnel board’s decision was unreasonable.
Plaintiff blames local court calendar conditions for the delay that occurred after the filing of his first and second amended complaints. He cites delays arising from the continuance of hearings on the City’s demurrers, trial court delays in ruling on the demurrers—including one demurrer the court held under submission for 159 days—and a continuance of the trial. These delays in the trial court do not, however, justify plaintiff’s failure to pursue judicial *69 resolution of his petition for writ of administrative mandate by asking the court to set the matter for a hearing. With respect to the court’s delays in ruling on the City’s demurrers, the demurrers did not challenge plaintiff’s petition for writ of administrative mandate, and thus did not prevent plaintiff from pursuing a court determination of his administrative mandate petition. As to the continuance of the trial date, plaintiff stipulated to that; thus, he cannot now complain about it.
A discharged employee’s unreasonable delay in seeking judicial review of the discharge may prejudice the employer either “because reinstatement would require discharge of a substitute emjployee or because the employing agency might be compelled to incur a double payment consisting of back pay to the discharged employee and salary to his replacement.” (Conti, supra, 1 Cal.3d at p. 360.) Here, the transcript of the summary judgment hearing before the trial court discloses that although plaintiff initially argued that he no longer sought backpay and reinstatement, he ultimately acknowledged in the trial court that he was seeking both remedies.
As a result of the City’s elimination of plaintiff’s former position as assistant city manager, plaintiff’s former duties were divided among other employees in the City’s restructuring of its managerial ranks. Given plaintiff’s long delay in challenging his discharge by means of a petition for writ of administrative mandate in the superior court, reinstatement at this late date would require the City to alter significantly its new management structure. An award of backpay would compel the City to make double payments: back wages to plaintiff and salaries to those employees among whom his former duties have been divided.
For the reasons set forth above, we agree with the superior court and the Court of Appeal that, given the unreasonable delay in question, the doctrine of laches bars plaintiff’s petition for writ of administrative mandate brought in superior court. Accordingly, plaintiff cannot now challenge the City’s administrative finding that he was laid off for economic, not discriminatory, reasons. We next consider the effect of this now-final factual finding by the City on plaintiff’s FEHA causes of action.
III.
As we noted at the outset, in Westlake Community Hosp. v. Superior Court, supra, 17 Cal.3d 465 (Westlake), this court held that unless a party to a quasi-judicial proceeding challenges the agency’s adverse findings made in that proceeding, by means of a mandate action in superior court, those *70 findings are binding in later civil actions.[2] This requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. (Knickerbocker v. City of Stockton (1988) 199 Cal.App.3d 235, 241 [244 Cal.Rptr. 764].) Exhaustion of administrative remedies is “a jurisdictional prerequisite to resort to the courts.” (Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715].) Exhaustion of judicial remedies, on the other hand, is necessary to avoid giving binding “effect to the administrative agency’s decision, because that decision has achieved finality due to the aggrieved party’s failure to pursue the exclusive judicial remedy for reviewing administrative action.” (Briggs v. City of Rolling Hills Estates (1995) 40 Cal.App.4th 637, 646 [47 Cal.Rptr.2d 29], original italics.)
In Westlake, supra, 17 Cal.3d 465, a hospital’s revocation of a doctor’s staff privileges was upheld by the hospital’s judicial review committee and board of directors. Without first challenging the board’s final decision in an administrative mandate proceeding in superior court, the doctor filed a tort action in superior court. We held that “plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants.” (Id. at p. 484.) We explained that “so long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the [defendant’s] action.” (Ibid.) A quasi-judicial decision is set aside when a court in a mandate proceeding determines that the decision cannot stand “either because of a substantive or procedural defect . . . .” (Ibid.)
Paramount to the Westlake holding were these two reasons: (1) the interest in according proper respect to an administrative agency’s quasi-judicial procedures by precluding a party from circumventing the established process for judicial review of such decisions by means of a petition for administrative mandate; and (2) “providing a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions.” (Westlake, supra, 17 Cal.3d at p. 484.)
The Westlake requirement that a party exhaust judicial remedies has been applied in various state and federal decisions. (E.g., Briggs v. City of Rolling Hills Estates, supra, 40 Cal.App.4th 637 [failure to challenge condition of building permit by administrative mandate precludes 42 U.S.C. § 1983 *71 federal civil rights action]; Knickerbocker v. City of Stockton, supra, 199 Cal.App.3d 235 [employee’s failure to challenge city civil service commission finding employee was properly demoted bars factually inconsistent claims]; City of Fresno v. Superior Court (1987) 188 Cal.App.3d 1484 [234 Cal.Rptr. 136] [employee’s dismissal of administrative mandate action with judgment in favor of city bars action for damages]; see People v. Sims (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321] [county’s failure to judicially challenge Department of Social Services’ finding in administrative hearing bars criminal proceeding]; Misischia v. Pirie (9th Cir. 1995) 60 F.3d 626 [failure to judicially challenge administrative determination precludes 42 U.S.C. § 1983 civil rights action]; Miller v. County of Santa Cruz (9th Cir. 1994) 39 F.3d 1030 [same]; Eilrich v. Remas (9th Cir. 1988) 839 F.2d 630 [same].)
Plaintiff exhausted his administrative remedies: He appealed to the city council the personnel board’s finding that his termination was based on economic, not discriminatory, reasons. The council upheld the board’s decision. But plaintiff failed to seek timely judicial relief from the City’s administrative determination. Therefore, the City’s decision “has achieved finality” (Briggs v. City of Rolling Hills Estates, supra, 40 Cal.App.4th at p. 646) and “has the effect of establishing the propriety” of the City’s decision (Westlake, supra, 17 Cal.3d at p. 484).
Plaintiff’s FEHA claim that his discharge was for discriminatory reasons is at odds with the preceding determination by the City that the termination was for economic reasons, a finding that, as we have explained, is now binding. Plaintiff insists to the contrary. In support, he raises three points.[3]
First, plaintiff points to certain language in previous cases in which we described the FEHA’s nature and purpose. For instance, in Brown v. Superior Court (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272], we described the FEHA as “a comprehensive scheme for combating employment discrimination.” In State Personnel Bd. v. Fair Employment & Housing Com. (1995) 39 Cal.3d 422, 431 [217 Cal.Rptr. 16, 703 P.2d 354], a plurality of this court stated that the FEHA “was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against *72 discrimination . . . .” And in Rojo v. Kliger, supra, 52 Cal.3d 65, 82 (Rojo), we said that the purpose of the FEHA “was not to narrow, but to expand the rights and remedies available to victims of discrimination.” Nothing in those statements compels a conclusion that the requirement of exhaustion of judicial remedies does not apply to FEHA claims.
As amicus curiae City of Glendale points out, the administrative processes of many cities and the State Personnel Board provide extensive and detailed procedural protections for those challenging adverse employment actions. (See Gov. Code, §§ 19574.1, 19574.2, 19578, 19580, 19581.) Here, as we discussed earlier, the City has in place an internal review process of which plaintiff availed himself. Refusing to give binding effect to the findings of administrative agencies in quasi-judicial proceedings would, as the City of Glendale observes, undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation.
Plaintiff cites Swartzendruber v. City of San Diego (1992) 3 Cal.App.4th 896 [5 Cal.Rptr.2d 64] as supporting his argument. The plaintiff there did not file in superior court a petition for writ of administrative mandate to set aside a civil service commission ruling that she had been properly terminated from employment. Instead, the plaintiff obtained a right to sue letter from the DFEH, and she filed a lawsuit alleging, among other things, sexual discrimination in violation of the FEHA. (Swartzendruber, supra, at pp. 901-902.) The Court of Appeal concluded that the FEHA process of obtaining a right to sue letter was “an alternative administrative avenue to the City’s internal review proceedings and an appeal to the Commission.” (Swartzendruber, supra, at p. 910.) The court stated that the language and holding in Rojo led it to its conclusion, even though it conceded that the “facts as well as the issue[s] decided in Rojo are distinguishable from this case.” (Swartzendruber, supra, at p. 911, fn. 8.) In Rojo, we concluded that in that particular case the doctrine of exhaustion of administrative remedies was inapplicable to nonstatutory causes of action because of the absence of an “internal remedy.” (Rojo, supra, 52 Cal.3d at p. 86.) We never said in Rojo that the requirement of exhaustion of judicial remedies did not apply to FEHA claims when, as here, an administrative process provides internal remedies and the plaintiff fails to obtain the requisite judicial review of an adverse administrative finding. In concluding to the contrary, the Court of Appeal in Swartzendruber erred, and we now disapprove that decision.
Plaintiff’s reliance on Watson v. Department of Rehabilitation (1989) 212 Cal.App.3d 1271 [261 Cal.Rptr. 204] is misplaced. Watson says nothing about FEHA. claims not being subject to the requirement of exhaustion of judicial remedies set forth in Westlake, supra, 17 Cal.3d 465. In Watson, the *73 Court of Appeal rejected the defendant’s argument that the plaintiff could not prevail because she had not exhausted her civil service administrative remedies. The court noted that the plaintiff “had a choice between her civil service remedies and those provided by [t]he Fair Employment and Housing Act,” but “chose to file her first charge with the DFEP [Department of Fair Employment Practices] and proceed accordingly.” (Watson, supra, at p. 1284.) It is clear from the quoted language that the Court of Appeal in Watson faced the issue of whether a plaintiff must exhaust non-FEHA administrative remedies as a prerequisite to initiating a lawsuit, including a FEHA claim. That issue is not before us. As we mentioned earlier, here plaintiff did exhaust the non-FEHA civil service administrative remedies provided by the City.
Plaintiff’s second point is that this court’s plurality decision in State Personnel Bd. v. Fair Employment & Housing Com., supra, 39 Cal.3d 422 (State Personnel) recognized that the Legislature intended public employees to be able to challenge an allegedly discriminatory employment practice through both an employer’s internal review procedures and resort to the FEHA, regardless of any adverse administrative adjudications. Not so. That case involved the resolution of a jurisdictional dispute between two state agencies, not the Westlake requirement of exhaustion of judicial remedies. The question in State Personnel, as this court framed it, was “whether the agencies charged with carrying out the California Fair Employment and Housing Act [citation] may constitutionally exercise jurisdiction over state civil service employees.” (Id. at p. 425, fn. omitted.) The question arose when the State Personnel Board obtained an injunction prohibiting the DFEH and the FEHC from processing the complaints of any civil service employees or applicants throughout the state. (Id. at p. 426.)
State Personnel, supra, 39 Cal.3d 422, involved three unsuccessful applicants who sought employment with the California Highway Patrol and claimed discriminatory rejection based on physical handicap. Two of the three applicants pursued their protests through a hearing before the State Personnel Board and through complaints filed with the DFEH. After the board upheld the disqualifications, the DFEH issued an accusation charging the board and the highway patrol with discrimination. The board then obtained an injunction against the DFEH and the FEHC on the ground that the board had “ ‘exclusive jurisdiction’ over all matters involving state civil service employees.” (Id. at p. 427.) This court disagreed.
The plurality in State Personnel stressed the distinction between an employee’s assertion of a private right before an administrative agency and the DFEH’s acting as a public prosecutor asserting a public right. In the words *74 of the plurality: “[A]n employee complaining before the Board is asserting a private right, while the DFEH is a ‘public prosecutor . . . test[ing] a public right.’ [Citation.] The employee’s choice to assert the former should not bar litigation of the latter right.” (State Personnel, supra, 39 Cal.3d at p. 444.) Thus, the plurality in State Personnel determined that a decision against an individual in an administrative proceeding does not preclude a public agency, when acting as a public prosecutor, from asserting a public right. It never said that the requirement of exhaustion of judicial remedies set forth in Westlake, supra, 17 Cal.3d 465, does not apply to FEHA claims. (See Oquendo v. California Institution for Women (1989) 212 Cal.App.3d 520, 522 [260 Cal.Rptr. 688] [noting that State Personnel determined only that government employees, like private employees, are within the FEHA].)
Plaintiff’s third point is that the United States Supreme Court’s holding in University of Tennessee v. Elliott, supra, 478 U.S. 788 (Elliott), that Title VII claims are not precluded by administrative decisions that have not been judicially reviewed on their merits, should be applied to state FEHA claims. He notes the similarity of provisions between Title VII and the FEHA and the reliance on federal authorities in California decisions interpreting the FEHA. (See, e.g., Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1245-1246 [32 Cal.Rptr.2d 223, 876 P.2d 1022]; Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 498 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) But the FEHA does not have a provision analogous to the Title VII language the high court found controlling in Elliott. Only when FEHA provisions are similar to those in Title VII do we look to the federal courts’ interpretation of Title VII as an aid in construing the FEHA. (Romano v. Rockwell Internat., Inc., supra, at p. 498.)
At issue in Elliott, supra, 478 U.S. 788, was whether a state administrative finding that the University of Tennessee was not motivated by racial prejudice in discharging the plaintiff was “entitled to preclusive effect in federal court, where [the plaintiff] raised discrimination claims under various civil rights laws, including Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983.” (Id. at p. 790 [106 S.Ct. at pp. 3221-3222], italics omitted.) The high court held that the state’s administrative finding did not preclude the Title VII claim, but did preclude the civil rights claim brought under 42 United States Code section 1983. The court looked to the language in Title VII requiring the federal Equal Employment Opportunity Commission to give “ ‘substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law.’ ” (Elliott, supra, at p. 795 [106 S.Ct. at p. 3224], quoting 42 U.S.C. § 2000e-5(b).) This express language, the court noted, would make little *75 sense if state agency findings precluded Title VII actions in federal court. (Elliott, supra, at p. 796 [106 S.Ct. at p. 3224].) Also, the court observed that allowing state agency findings to have a binding effect would be inconsistent with the intent of Congress that federal courts apply de novo review of Title VII claims after administrative decisions. (Id. at pp. 795-796 [106 S.Ct. at pp. 3224-3225].)
There is no provision in the FEHA analogous to the Title VII language at issue in Elliott, supra, 478 U.S. 788. Nor do we have a procedure similar to the federal courts’ de novo review of Title VII administrative decisions. Although our state law may provide for a court’s exercise of its independent judgment in reviewing the decision of an administrative agency adverse to an employee, such review occurs in the administrative mandate proceeding, not in the employee’s civil action asserting a FEHA claim. (Strumsky v. San Diego County Employees Retirement Assn. (1974) 11 Cal.3d 28, 31-32 [112 Cal.Rptr. 805, 520 P.2d 29].) A plaintiff’s civil action asserting a FEHA claim follows the DFEH’s issuance of a right to sue letter, not an administrative finding. (Gov. Code, § 12965, subd. (b); State Personnel, supra, 39 Cal.3d at pp. 443-444.) For the reasons stated, the rationale of the United States Supreme Court in Elliott, leading to its conclusion that judicially unreviewed state agency findings do not have a binding effect on Title VII claims, is inapplicable to claims brought under California’s FEHA.
But the reasoning of the high court in Elliott, leading to its conclusion that state agency findings do have a binding effect on claims brought under section 1983 of the federal civil rights act (42 U.S.C.), is applicable to claims brought under California’s FEHA. Like the congressional history of section 1983, the legislative history of the FEHA “ ‘does not in any clear way suggest that [the California Legislature] intended to repeal or restrict the traditional doctrine of preclusion.’ ” (Elliott, supra, 478 U.S. at p. 797 [106 S.Ct. at p. 3225].) And the value underlying the principles of preclusion of enforcing repose is as applicable to a FEHA claim as it is to a section 1983 claim. This value includes “both the parties’ interest in avoiding the cost and vexation of repetitive litigation and the public’s interest in conserving judicial resources . . . .” (Elliott, supra, at p. 798 [106 S.Ct. at p. 3226].)
Plaintiff also relies on Alexander v. Gardner-Denver Co. (1974) 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] (Alexander), to support his contention that prior administrative agency findings cannot be binding on FEHA actions. Plaintiff’s reliance is misplaced.
In Alexander, supra, 415 U.S. 36, the United States Supreme Court held that an arbitrator’s decision is not binding on an employee’s Title VII claim *76 when the employee pursues the grievance “to final arbitration under the nondiscrimination clause of a collective-bargaining agreement.” (Id. at p. 49 [94 S.Ct.. at p. 1020].) As clarified in a later case, Alexander and its progeny concerned the arbitration of contract-based rather than statutory claims. Also, the employees in Alexander had not agreed to arbitrate the statutory claims; the arbitrators lacked the authority to resolve statutory claims; and the arbitration was in the context of a collective bargaining agreement, which by its very nature gives rise to a tension between collective representation and individual statutory rights. (Gilmer v. Interstate/Johnson Lane Corp. (1991) 500 U.S. 20, 35 [111 S.Ct. 1647, 1656, 114 L.Ed.2d 26]; see Wright v. Universal Maritime Service Corp. (1998) 525 U.S. 70, 76-77 [119 S.Ct. 391, 395-396, 142 L.Ed.2d 361]; 4 Larson, Employment Discrimination (2d ed. 1999) § 77.02[1][a], pp. 77-6 to 77-10; see Brosterhous v. State Bar (1995) 12 Cal.4th 315, 332-335 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) This case involves neither mandatory arbitration nor collective bargaining. Thus, the high court’s decision in Alexander has no bearing on this case.
Similarly unavailing is plaintiff’s reliance on Duffield v. Robertson Stephens & Co. (9th Cir. 1998) 144 F.3d 1182, which involved mandatory arbitration. There the federal court of appeals held that under the Civil Rights Act of 1991 (Pub.L. No. 102-166 (Nov. 21, 1991) 105 Stat. 1071) employers could not require as a mandatory condition of employment that all employees waive their right to bring Title VII claims in court. (Duffield, supra, at p. 1185.) Unlike Duffield, this case does not involve mandatory arbitration.
We conclude that when, as here, a public employee pursues administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the FEHA.
We now address the City’s challenge to the Court of Appeal’s holding that plaintiff’s failure to obtain a judicial set-aside of the City’s adverse administrative finding does not preclude his federal claim under Title VII.
IV.
The Court of Appeal disagreed with the trial court’s ruling that because of the applicability of the City’s defense of laches, the City’s administrative finding against plaintiff had achieved finality, thus precluding plaintiff’s federal claim under Title VII. The Court of Appeal explained that under California law a judgment denying a petition for writ of administrative mandate because of the defense of laches is not a judgment on the merits for *77 purposes of res judicata. Because a state court judgment bars a Title VII federal claim only if the judgment is entitled to res judicata effect under state law (Elliott, supra, 478 U.S. at p. 796 [106 S.Ct. at p. 3224]; Kremer v. Chemical Const. Corp. (1982) 456 U.S. 461, 463, 485 [102 S.Ct. 1883, 1887, 1889, 72 L.Ed.2d 262]), the Court of Appeal here concluded that plaintiff’s Title VII claim remains legally viable. We agree.
A judgment is on the merits for purposes of res judicata “if the substance of the claim is tried and determined . . . .” (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 313, p. 864.) The doctrine of laches bars a cause of action when the plaintiff unreasonably delays in asserting or diligently pursuing the cause and the plaintiff has acquiesced in the act about which the plaintiff complains, or the delay has prejudiced defendant. (Conti, supra, 1 Cal.3d at p. 359; San Bernardino Valley Audubon Society v. City of Moreno Valley (1996) 44 Cal.App.4th 593, 605 [51 Cal.Rptr.2d 897].) The defense of laches has nothing to do with the merits of the cause against which it is asserted. As we said in Conti, supra, at page 361: “The telling consideration must be that laches constitutes an affirmative defense which does not reach the merits of the cause . . . .” (Fn. omitted, italics added.)
Contrary to the City’s contention, we did not hold in Keidatz v. Albany (1952) 39 Cal.2d 826 [249 P.2d 264] that a ruling based on laches is a determination on the merits of a cause. That case addressed the binding effect of a judgment entered after the sustaining of a demurrer, not whether laches is a ruling on the merits. (See Koch v. Rodlin Enterprises (1990) 223 Cal.App.3d 1591, 1596-1597 [273 Cal.Rptr. 438].)
The City notes that the doctrine of res judicata promotes the public policies of giving certainty to legal proceedings, preventing parties from being unfairly subjected to repetitive litigation, and preserving judicial resources. (See, e.g., Parklane Hosiery Co. v. Shore (1979) 439 U.S. 322, 326 [99 S.Ct. 645, 649, 58 L.Ed.2d 552]; Bernhard v. Bank of America (1942) 19 Cal.2d 807, 810-811 [122 P.2d 892].) These public policies, the City argues, would be promoted if we were to hold that a trial court’s ruling on the basis of laches is a judgment on the merits. What the City overlooks, however, is that the doctrine of res judicata also requires that the prior dispute be resolved on its merits. (7 Witkin, Cal. Procedure, supra, Judgment, § 313, pp. 864-865.) That requirement would not be satisfied if we were to adopt the City’s argument.
Finally, we reject the City’s argument that the trial court’s ruling on plaintiff’s FEHA claim was a ruling on the merits. That ruling was based entirely on the City’s administrative findings, not on the merits of plaintiff’s Title VII claim.
*78 Disposition
The judgment of the Court of Appeal is affirmed.
George, C. J., Mosk, J., Baxter, J., Chin, J., and Brown, J., concurred.

If the DFEH considers the claim valid, it tries to resolve the problem through conciliation and persuasion. (Gov. Code, § 12963.7.) The DFEH may also issue an accusation in its own name to be heard by the Fair Employment and Housing Commission (FEHC). (Gov. Code, §§ 12965, subd. (a), 12969.) When an accusation is issued, the DFEH performs a prosecutorial function and argues the case before the FEHC through its attorneys and agents. (Gov. Code, § 12969.) If the DFEH does not issue an accusation within 150 days after filing of the claim, or if it determines not to issue an accusation before the 150 days have elapsed, it must *67 promptly notify the claimant that it will issue at the claimant’s request a right to sue letter to enable the claimant to bring a civil action in court. (Gov. Code, § 12965, subd. (b).) When, as here, the claimant does not request a right to sue letter, the DFEH must issue such a letter no later than one year after filing of the complaint. (Ibid.)

Contrary to the concurring opinion (post, at p. 80), our holding in Westlake, supra, 17 Cal.3d 465, applies to quasi-judicial proceedings conducted by public as well as private entities. As we said in Rojo v. Kliger (1990) 52 Cal.3d 65, 86 [276 Cal.Rptr. 130, 801 P.2d 373]: “The ‘context’ to which Westlake properly applies is where the party or entity whose ‘quasi-judicial’ determination is challenged—be it hospital, voluntary private or professional association, or public entity—has provided an internal remedy.”

Plaintiff does not challenge the City’s administrative finding on the ground that the City failed to afford him a full and fair opportunity to litigate. (See United States v. Utah Constr. Co. (1966) 384 U.S. 394, 422 [86 S.Ct. 1545, 1560, 16 L.Ed.2d 642]; People v. Sims, supra, 32 Cal.3d at p. 479.) Although plaintiff asserts that the personnel board at the hearing refused to hear certain testimony on the alleged retaliatory nature of his termination, he does not here challenge the City’s finding that he was terminated for economic reasons. Instead, he argues that he should not be bound by that finding in later FEHA and Title VII actions.