Archie CRIPPEN, Plaintiff–Appellant,

v.

CITY OF FRESNO, Defendant–Appellee.

No. 06–16046.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 14, 2008.*

Filed April 17, 2008.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Charles L. Doerksen, Law Offices, Fresno, CA, Robert J. Taylor, Jr., Law Offices, Newbury Park, CA, for Plaintiff–Appellant.

James B. Betts, Joseph D. Rubin, Betts & Wright, Fresno, CA, for Defendant–Appellee.

Before: D.W. NELSON, KLEINFELD, and HAWKINS, Circuit Judges.

## MEMORANDUM **

Archie Crippen ("Crippen") appeals the adverse summary judgment grant in his 42 U.S.C. § 1983 action, alleging that the City of Fresno ("the City") violated his Fourteenth Amendment equal protection rights under the doctrine articulated in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). We affirm.

Crippen is a licensed California contractor who operated, on properties he owned in the City, public truck scales, a concrete/asphalt recycling business, and a wood waste, storage, and recycling business. In January 2003, a five-acre debris pile located on Crippen's property caught fire and burned for approximately thirty days. It was one of the worst disasters in Fresno's recent history, leading to the declaration of a local emergency and requiring federal and state agencies to assist the City in fire suppression and clean-up efforts at the cost of millions of public dollars.

In response to the fire, City officials revoked Crippen's conditional use permits; placed a hold on Crippen's applications for demolition permits; and designated Crippen a "non-responsible bidder," which impeded his ability to enter into public bidding contracts with the City. Crippen argues that these responses amount to unconstitutional disparate treatment.

As an initial matter, Crippen is precluded from challenging the findings of the Fresno City Planning Commission ("the Commission"). Because California has adopted the fairness standards of *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), the only question is "whether the administrative hearing [meets] the requirements of California law such that a California court would have accorded the determination preclusive effect." *Miller v. County of Santa Cruz,* 39 F.3d 1030, 1033 (9th Cir.1994). Crippen failed to exhaust his judicial remedies by abandoning his petition for writ of administrative mandamus. *See* Cal. Civ. Proc. § 1094.5; *Johnson v. City of Loma Linda,* 24 Cal.4th 61, 99 Cal.Rptr.2d 316, 5 P.3d 874, 876 (2000). This failure to exhaust means that the California courts would accord the Commission's findings preclusive effect.[1] *See Mir v. Little Co. of Mary*

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. Further, we do not see merit in Crippen's challenges to the Commission proceedings. He cites no authority establishing that state administrative tribunals have a disclosure duty akin to that of prosecutors under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Moreover, the State Fire Marshall's report, which was only a draft, does not appear to be exculpatory. The report found it "impossible to absolutely determine the origin & cause of this fire," but found that third-party arson was unlikely to have been the source. The report discussed three possible causes of the fire: Crippen's heavy machinery accidentally igniting metal debris, "hot work" near the debris pile, and spontaneous combustion. None of these possible causes undermines the crux of the Commission's findings, which was that Crippen violated the terms of his conditional use per-

*Hosp.*, 844 F.2d 646, 650–51 (9th Cir.1988). Therefore, we accept the Commission's findings as true.[2]

Relying on the Commission's findings and our review of the record, we are satisfied that Crippen violated the conditions of his conditional use permits as well as several local and California State regulations. These violations contributed to the intensity of the fire and obstructed suppression efforts.

■ Disparate treatment is constitutionally acceptable if it is rationally related to a legitimate state interest. *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004). By revoking Crippen's conditional use permits, placing a hold on his demolition permits (which were eventually approved), and designating him a non-responsible bidder, the City took measures rationally related to its legitimate interests in eliminating public nuisances and protecting the health of its citizens and its environment.

The Constitution permits the government to "use [a] past disaster as a measure of future performance," and to prevent the person responsible from continuing to engage in the disaster-causing activities. *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 680 (9th Cir.2002). While Crippen's track record of violations and the devastating fire that resulted might not have justified an attempt by the City to, say, enforce the tax laws against him with unusual zeal, it was undoubtedly rational for the City to take those consid-erations into account when evaluating Crippen's fitness to engage in contracting and demolition work and to use his property as he had in the past.

■ Crippen also fails in his attempt to identify similarly situated comparators. *See Goldberg*, 375 F.3d at 945. The record shows that Bairos Recycling, Inc. experienced a substantial fire, that it was in violation of its conditional use permit, and that the owners may have violated a red-tag order. This is insufficient to establish Bairos Recycling as an adequate comparator. Crippen does not tell this court the extent of Bairos Recycling's violations, or whether they were linked to the cause of the fire. We also do not know whether that fire was as substantial as Crippen's. There is, in other words, no evidence showing whether Bairos Recycling is "of comparable size, has a comparable history of non-compliance, engages in a comparable level of activity on its land," or caused as much devastation to Fresno. *Id.* Similarly, Crippen's son is no comparator for the simple reason that, as far as this court is aware, he has not committed any regulatory violations that have led to a catastrophic fire.

■ Additionally, Crippen has failed to raise a triable issue of fact as to pretext because he has not shown either that "(1) the proffered rational basis was objectively false; or (2) the defendant actually acted based on an improper motive." *Id.* at 946. There is no indication that the rationale is objectively false,[3] and Crippen has

---

mits and various state and local regulations, and that these violations contributed to the severe consequences of the fire.

2. We will assume, without deciding, that Crippen is not barred by the doctrine of res judicata from challenging the revocation of his conditional use permits as a result of his failure to challenge the Commission's deci-sion, even though the Commission's factual findings are binding on this court.

3. We reject Crippen's claim that the rationale for the demolition permits was objectively false. Although Crippen claims that the district court's finding on this issue is insufficient because "the destination for disposal of the demolition debris was disclosed on the very first page of the application for the per-

not identified any improper motives by the City or its officials. Although Crippen points to statements by the City Manager that suggest there was strong public pressure to refrain from acting leniently toward Crippen, this alone does not demonstrate an improper motive. Public pressure resulting from something the public would be naturally concerned about—a disastrous fire that resulted from regulatory violations—does not, in and of itself, demonstrate improper motive. *Cf. SeaRiver,* 309 F.3d at 680 ("It is reasonable for Congress to single out the Exxon Valdez due to the magnitude of the spill and the sensitivity of the area where the spill occurred.").

**AFFIRMED.**

mit itself," in light of Crippen's history of violations, it was rational for the City not to take him at his word on the application. Additionally, at the time of the hold, the City was still attempting to figure out how to treat

Crippen as a result of the fire. It was rational for it to delay issuing permits to him while it continued to consider how to respond to his past violations.