Filed 6/24/16  Michelson v. Proskauer Rose LLP CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GARY K. MICHELSON, et al., | B259013 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC384760) |
| v. | |
| PROSKAUER ROSE, LLP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark Mooney, Judge.  Reversed.

Kinsella Weitzman Iser Kump & Aldisert, Dale F. Kinsella, Patricia A. Millett; Greines, Martin, Stein & Richland, Irving H. Greines, Edward L. Xanders for Plaintiffs and Appellants.

Davis Polk & Wardwell, Paul Spagnoletti; Proskauer Rose for Defendant and Respondent.

_____

Plaintiffs Dr. Gary K. Michelson[1] and Karlin Holdings Limited Partnership[2] (collectively, Michelson) appeal from a judgment entered after the trial court granted summary judgment in favor of defendant law firm Proskauer Rose (Proskauer) in this action alleging fraud, negligent misrepresentation, breach of fiduciary duty, professional malpractice, and unfair business practices. We conclude the trial court erred in excluding certain evidence based on Proskauer's objections. We also find Michelson has shown triable issues of material fact. Accordingly, we reverse the judgment.

## BACKGROUND

**The SDI and Odora Transactions**

In or about mid-November 2001, Ernst & Young (EY), an accounting firm with which Michelson already had a relationship, solicited Michelson regarding participation in a program called Strategically Diversified Investment or SDI. EY suggested SDI as a means for Michelson to reduce his tax liability on his substantial 2001 earnings. SDI, a complex transaction involving investments in foreign currency options, was structured to create large losses the investor could claim immediately to offset ordinary income. Moreover, EY projected the proceeds from the later sale of the investment would be taxed more favorably than ordinary income.

Before investing in SDI, Michelson sought advice from several individuals and firms in addition to EY (where his principal contact was partner Tom Dougherty). Michelson's longtime attorneys at Jeffer Mangels Butler & Mitchell (Jeffer Mangels), specifically Burton Mitchell, the head of the tax practice at Jeffer Mangels, advised him regarding the SDI transaction. Michelson also sought advice from his longtime personal tax accountant, Stephen Collett.

---

[1] Dr. Michelson is a spinal surgeon and inventor who holds hundreds of patents "covering inventions and techniques related to spinal instruments, surgical implants and surgical techniques."

[2] Dr. Michelson is the sole director of the general partner of Karlin Holdings Limited Partnership. Dr. Michelson conducted the transactions and made the financial investments at issue in this case through Karlin Holdings Limited Partnership.

While Michelson was considering an investment in SDI, he learned about a similar tax-advantageous program called Odora which also involved investments in foreign currency options and up-front losses he could claim on his tax returns. John Staddon from Euram, a bank intimately involved with both the SDI and Odora transactions, contacted Michelson about Odora. Jeffer Mangels also advised Michelson regarding Odora.

**Proskauer's Written Tax "Should" Opinions**[3]

Michelson and his advisors (Mitchell and Collett) expressed concern regarding the risk of an IRS audit if Michelson invested in SDI. Michelson asked EY to indemnify him against potential IRS penalties, but EY declined. Dougherty explained to Michelson that he did not need indemnification from EY if he received a tax opinion from a qualified law firm concluding SDI should survive IRS scrutiny. Dougherty informed Michelson that Proskauer was prepared to issue Michelson a "should" tax opinion regarding the SDI transaction, and that such an opinion would insulate him from the IRS imposing under-reporting penalties. John Staddon from Euram similarly informed Michelson that Proskauer was prepared to issue a should tax opinion for the Odora transaction, and further indicated that such an opinion would insulate Michelson from IRS penalties.

Michelson retained Proskauer to prepare the tax opinions regarding the SDI and Odora transactions for a fee of $150,000. Mitchell, Michelson's attorney at Jeffer Mangels, communicated with Proskauer concerning preparation of the tax opinions. Michelson never had a conversation with anyone at Proskauer regarding the opinions or the SDI and Odora transactions.

In late November 2001, Proskauer sent Mitchell drafts of the should tax opinions prior to the dates the SDI and Odora transactions closed at the end of 2001. According to

[3] Our statement of the facts includes evidence the trial court excluded based on Proskauer's objections (namely, Proskauer's "should" tax opinions, and statements in Michelson's declaration and deposition testimony that he read and relied on the tax opinions). We include this evidence because we find the trial court abused its discretion in excluding the evidence for the reasons set forth below.

Michelson's deposition testimony, he read the drafts and was satisfied the language in the tax opinions was consistent with what EY and Staddon represented would be included in the opinions. Michelson invested a total of about $120 million in SDI and Odora.

Proskauer and Jeffer Mangels worked together to revise the draft tax opinions. Numerous drafts were exchanged between the two law firms, with Jeffer Mangels requesting changes to both the facts and legal analysis. In October 2002, Proskauer issued eight final tax opinions, four for each transaction (a should opinion, an opinion that it was more likely than not that Michelson was not required to disclose the transaction to the IRS, an opinion that it was more likely than not that Michelson would not be subject to penalties, and a supplemental opinion stating an IRS notice issued after Proskauer finalized the other opinions did not alter Proskauer's substantive conclusions). According to Michelson's deposition testimony, he read the final opinions.

Stephen Collett believes he reviewed Proskauer's final tax opinions before filing Michelson's 2001 tax return. Michelson claimed tax benefits based on the SDI and Odora investments. Michelson filed "protective Disclosure Statements" regarding his participation in SDI and Odora.

**The IRS Audit**

The IRS audited Michelson's 2001 tax return and concluded the SDI and Odora transactions were illegal tax shelters. The IRS disallowed Michelson's deductions based on the losses and assessed penalties and required him to pay back taxes. The IRS also concluded Proskauer's should opinions were invalid and could not shield him from penalties because Proskauer was a promoter of SDI and Odora and not an independent law firm.

Jeffer Mangels represented Michelson in connection with the audit. Michelson settled with the IRS instead of litigating in court, paying $47,469,813 in back taxes and $4,746,986 in penalties.

**The Complaint in This Action**

In February 2008, Michelson filed this action against Proskauer. In the operative second amended complaint, he asserts causes of action for breach of fiduciary duty,

4

fraud, negligent misrepresentation, professional malpractice, and unfair business practices. Michelson alleges he invested in SDI and Odora based on Proskauer's representations it was an independent law firm acting on his behalf, and it would provide him with should tax opinions attesting to the validity of the SDI and Odora investments and their likelihood of withstanding IRS scrutiny. He further alleges he claimed tax deductions for losses generated by SDI and Odora on his 2001 tax returns in reliance on the formal tax opinions Proskauer prepared for and sent to him. Michelson also alleges he would not have invested and claimed the losses if Proskauer had disclosed the true facts of which it was aware, including (1) that Proskauer was not independent, but had been involved in structuring the SDI and Odora investments, and "its tax opinions therefore could not insulate Dr. Michelson from protection against IRS penalties;" (2) that the IRS had identified similar transactions as abusive and illegal tax shelters, and (3) that Proskauer "had concluded that it was not 'more likely than not' that deductions taken in connection with SDI and Odora would be sustained by the IRS."

**Litigation of Attorney-Client Privilege Issue in Trial Court and This Court**

During discovery, Michelson refused to produce to Proskauer his communications with Jeffer Mangels regarding the SDI and Odora transactions and Proskauer's tax opinions, asserting the attorney-client privilege. Proskauer moved to compel Michelson's disclosure of these communications, arguing (1) this action placed Michelson's privileged communications with Jeffer Mangels directly at issue, and (2) disclosure of these communications is essential to a fair adjudication of this action. The trial court denied Proskauer's motion to compel.

Proskauer sought writ relief in this court. We denied Proskauer's petition. (*Proskauer Rose, LLP v. Superior Court* (Apr. 30, 2013, B245624) [nonpub. opn.].) In concluding Michelson did not waive the attorney-client privilege between himself and Jeffer Mangels by filing this action against Proskauer, we explained: "In order to prevail in his underlying suit against Proskauer, Michelson's own state of mind and the grounds on which he decided to invest and take deductions with respect to the SDI and Odora investments will be at issue. But it is *his* state of mind that will be at issue, not the state

5

of mind of the attorneys with whom he communicated at Jeffer Mangels. No privilege protects Michelson from disclosure of his own knowledge; but what Jeffer Mangels might have told him, and what he might have told Jeffer Mangels, remains privileged, even if Proskauer might find that information relevant and helpful to its defense. [Citation.] [¶] Michelson's pleadings do not place in issue the decisions, conclusions, or mental state of Jeffer Mangels, or the contents of his communications with anyone at that firm. Michelson's knowledge and understanding of the subject of his SDI and Odora investments is discoverable, but the contents of his communications with Jeffer Mangels on that subject was not put in issue by his suit against Proskauer, and therefore remains protected by the attorney-client privilege. [Citation.] The fact that Michelson's underlying claims place his own state of mind at issue does not place at issue any otherwise-privileged communications that might or might not have influenced his thinking or his conduct. If it did, little of the attorney-client privilege would remain." (*Id.* at p. 14.)

**Proskauer's Motion for Summary Judgment**

In July 2013, Proskauer moved for summary judgment or, in the alternative summary adjudication. In its supporting memorandum of points and authorities, Proskauer argued Michelson cannot show reliance on Proskauer's advice—a requisite element of Michelson's causes of action—due to his refusal to waive the attorney-client privilege and disclose "the substance of his communications with Jeffer Mangels." In support of this argument, Proskauer asserted, "It is beyond dispute that *all* of Proskauer's advice was filtered to [Michelson] through Jeffer Mangels, and [Michelson] has *admitted* that he relied on Jeffer Mangels when making his investments." (Original italics.) Proskauer also made the following additional arguments in its memorandum of points and authorities: (1) that "Michelson's settlement with the tax authorities broke any causal connection to Proskauer" because "the advice he received from Proskauer was premised on the expectation that he would litigate against the IRS, *which he did not do*" (original italics); and (2) that Michelson cannot prove any of the misrepresentations alleged in his breach of fiduciary duty and fraud causes of action.

6

Michelson filed an opposition addressing the arguments Proskauer raised in connection with its motion for summary judgment, including Proskauer's argument regarding the dispositive effect of Michelson's assertion of the attorney-client privilege concerning his communications with Jeffer Mangels. Michelson disputed Proskauer's assertion that communications between Michelson and Jeffer Mangels were "'central to his claim[s]' and 'essential to [his] case.'" Michelson pointed to evidence demonstrating he invested in SDI and Odora in reliance on "Proskauer's willingness to issue 'should' tax opinions" for these transactions, as Proskauer authorized Tom Dougherty at EY and John Staddon at Euram to communicate to Michelson. He also pointed to evidence demonstrating he claimed tax deductions for SDI and Odora on his 2001 tax returns in reliance on the tax opinions, which Proskauer prepared for and addressed to him, and which he, himself, read.

Proskauer filed written objections to Michelson's evidence, asking the trial court to exclude, among other things, references in Michelson's declaration in opposition to summary judgment and in his deposition testimony regarding his reliance on Proskauer's tax opinions. In making its objections, Proskauer argued, in pertinent part, "The Court should exclude all evidence that Michelson relied on legal advice from Proskauer or received any representations from Proskauer that were filtered through Jeffer Mangels because [Michelson has] abused the discovery process by selective waiver of the attorney-client privilege. [Evid. Code, §§ 912, 954.] [Michelson has] aggressively asserted the privilege to prevent Proskauer from discovering evidence of any communications between Jeffer Mangels and Michelson. Now, however, [Michelson seeks] to rely on evidence that Michelson received, read, and relied on information from Proskauer that he received only through his attorneys at Jeffer Mangels. The proper remedy where a party has asserted the attorney-client privilege in discovery and then seeks to introduce evidence that it has previously withheld is to exclude the evidence."

Of the 42 objections Proskauer made to Michelson's evidence based on selective waiver of the attorney-client privilege and the related ground of "fundamental fairness," the trial court sustained 39 of them. The court thereby excluded references in

7

Michelson's declaration and deposition testimony, and his accountant Stephen Collett's deposition testimony, regarding Michelson's review of and reliance on Proskauer's tax opinions, and also excluded all drafts and final copies of Proskauer's tax opinions.

The trial court granted Proskauer's motion for summary judgment. The court's order states, in pertinent part: "Proskauer submitted sufficient evidence to establish that communications from Proskauer to Plaintiffs were filtered through Plaintiffs' attorneys at Jeffer Mangels, that Plaintiffs never spoke to anyone from Proskauer, and that Plaintiffs relied upon parties other than Proskauer. The burden was therefore shifted to Plaintiffs to establish their reliance on Proskauer's representations. But Plaintiffs have not shown *what* representations by Proskauer they relied on, nor have they shown *when* they received those representations. Without that foundation, Plaintiffs cannot, as a matter of law, establish the necessary elements of reliance or causation because *all* representations and information from Proskauer to Plaintiffs were filtered through Plaintiffs' attorneys at Jeffer Mangels; Plaintiffs have asserted the attorney-client privilege with respect to those filtered communications; and the record contains no admissible evidence that Plaintiffs justifiably relied on Proskauer's advise or that Proskauer's advice caused Plaintiffs any harm. Moreover, Plaintiffs cannot prove, as a matter of law, their claims regarding omissions. Because Plaintiffs cannot establish the foundational issues underlying their purported reliance on Proskauer's representations, neither can they establish those same foundational issues for their purported reliance on any alleged omissions." The trial court entered judgment in favor of Proskauer.

## DISCUSSION

### Standard of Review

A trial court should grant summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant may establish its right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the moving defendant has satisfied

8

its burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action. (*Ibid*.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66.) We view the evidence and the inferences reasonably drawn from the evidence "in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

**The Trial Court's Exclusion of Evidence Based on Proskauer's Objections**

Michelson contends the trial court erred in excluding Proskauer's tax opinions, and references in Michelson's declaration and deposition testimony and his accountant Stephen Collett's deposition testimony regarding Michelson's review of and reliance on Proskauer's tax opinions. We review the evidentiary rulings for abuse of discretion. (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639.) We agree with Michelson that the court erred.

The trial court excluded this evidence based on the ground Michelson could not selectively waive his attorney-client privilege with Jeffer Mangels. We disagree with the court's assessment that the evidence constitutes privileged communications between Michelson and Jeffer Mangels.

Michelson retained Proskauer to prepare the tax opinions. Proskauer prepared the opinions and addressed them to Michelson. Proskauer sent the opinions to Jeffer Mangels. Michelson has not asserted the attorney-client privilege regarding communications between Proskauer and Jeffer Mangels. The tax opinions themselves, which were not privileged for purposes of this litigation when Proskauer sent them to Jeffer Mangels, do not become privileged when Jeffer Mangels sends them to Michelson.

9

What is privileged is Jeffer Mangels's *communications* to Michelson. Michelson does not rely on any such communication in opposing the summary judgment motion.[4]

Michelson presented evidence indicating he read Proskauer's draft and final tax opinions which were prepared for and directed to him. In his declaration and deposition testimony he states, based on his own reading of the opinions and information he had received from persons other than individuals at Jeffer Mangels (e.g., Dougherty and Staddon), he understood that the tax opinions stated the SDI and Odora transactions should survive IRS scrutiny in court and that the opinions would insulate him from IRS penalties. He also states, in investing in the SDI and Odora transactions and claiming the deductions on his 2001 tax return, he relied on his own reading of the opinions and information he had received from persons other than individuals at Jeffer Mangels. He has not disclosed the substance of any communication between himself and Jeffer Mangels. "Relevant case law makes clear that mere disclosure of the fact that a communication between client and attorney had occurred does *not* amount to disclosure of the specific content of that communication, and as such does not necessarily constitute a waiver of the privilege." (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 602.)

This is not a case in which an attorney's transmission of an unprivileged document to a client might reveal the attorney's strategy. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 734 ["'[T]he [attorney-client] privilege covers the transmission of documents which are available to the public, and not merely information in the sole possession of the attorney or client. In this regard, it is the actual fact of the transmission which merits protection, since discovery of the transmission of specific public documents might very well reveal the transmitter's intended strategy'"].) Proskauer authored the opinion letters for Michelson. Of course Jeffer Mangels was going to forward copies of the letters to Michelson. The fact Michelson received the

---

[4] Michelson argues there is a triable issue of material fact regarding whether Proskauer sent the opinions directly to him rather than through Jeffer Mangels. We need not resolve this issue given our holding the excluded evidence is not privileged.

opinions from Jeffer Mangels is not privileged information. In opposing the summary judgment motion, Michelson has not disclosed the content of any communication between himself and Jeffer Mangels about the tax opinions or the SDI and Odora transactions.

For these reasons, we find the trial court abused its discretion in excluding this evidence.

**Triable Issues of Material Fact**

Considering the evidence the trial court excluded, it is clear Michelson has demonstrated triable issues of material fact which defeat Proskauer's summary judgment motion.

As set forth above, in its memorandum of points and authorities in support of its summary judgment motion and on appeal, Proskauer argued Michelson cannot show reliance on Proskauer's advice because "*all* of Proskauer's advice was filtered to [Michelson] through Jeffer Mangels, and [Michelson] has *admitted* that he relied on Jeffer Mangels when making his investments." (Original italics.) Proskauer asserted Michelson could not prove reliance without waiving the attorney-client privilege regarding his communications with Jeffer Mangels. As our discussion in the prior section of this opinion shows, Michelson has presented admissible, non-privileged evidence indicating he read the draft and final Proskauer tax opinions and relied on them in investing in SDI and Odora and in claiming deductions on his 2001 tax return. There is plenty of other non-privileged evidence in the record, including evidence regarding the role Jeffer Mangels played in these transactions (e.g., its revision of the draft tax opinions), for a trier of fact to decide whether Michelson relied on Proskauer's tax opinions or counsel from Jeffer Mangels or the advice of others or a combination of all of the above.[5]

---

[5] As we stated in our prior opinion in this matter, Michelson may not waive the privilege at a later stage of this litigation if he believes communications between himself and Jeffer Mangels are necessary to prove his case at trial. (*Proskauer Rose, LLP v. Superior Court*, *supra*, B245624, p. 15.)

11

Proskauer also argued in its memorandum of points and authorities and on appeal that "Michelson's settlement with the tax authorities broke any causal connection to Proskauer" because "the advice he received from Proskauer was premised on the expectation that he would litigate against the IRS, *which he did not do*." Michelson presented evidence indicating he settled with the IRS because Proskauer misrepresented facts and failed to disclose facts which rendered Proskauer's tax opinions worthless— e.g., that Proskauer was a promoter of the SDI and Odora transactions and not an independent law firm, and that the IRS had identified similar transactions as abusive and illegal tax shelters. It is for the trier of fact to decide whether Michelson's settlement was a reasonable mitigation of damages.[6]

For the foregoing reasons, we conclude the trial court erred in granting Proskauer's summary judgment motion and reverse.

### DISPOSITION

The judgment is reversed. Michelson is entitled to recover costs on appeal.

NOT TO BE PUBLISHED.

                                                    CHANEY, Acting P. J.

We concur:

        JOHNSON, J.                          LUI, J.

---

[6] We need not address at length the last argument Proskauer raises on appeal in support of affirmance of the trial court's grant of summary judgment/summary adjudication—that there is no evidence in the record supporting Michelson's "omission claims." None of Michelson's causes of action is based solely on allegations of omissions. Michelson also alleges misrepresentations. On appeal, Proskauer does not challenge the sufficiency of the evidence supporting the misrepresentation claims (other than to ask this court to uphold the trial court's exclusion of evidence based on selective waiver of the attorney-client privilege, an argument we already have rejected). Accordingly, a finding of lack of evidence supporting the allegations regarding omissions would not defeat any cause of action and is not grounds for affirming summary judgment/summary adjudication.

Michelson has advanced other grounds for reversal of the summary judgment, but there is no need for us to address them given our reversal on the above grounds.