Filed 5/14/15  Kent v. Lake Don Pedro Com. Services Dist. CA5

**NOT TO BE PUBLISHED IN THE OFFICAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT D. KENT et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>LAKE DON PEDRO COMMUNITY SERVICES DISTRICT,<br><br>Defendant and Respondent. | Consolidated Case Nos.<br>F068354 & F069197<br><br>(Super. Ct. No. 9395)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Mariposa County.  Wayne R. Parrish, Judge.

Law Offices of Linda L. Daube, Linda L. Daube and Jeanette L. Lebell for Plaintiffs and Appellants.

Griswold, LaSalle, Dowd, Cobb & Gin, Raymond L. Carlson and Mario U. Zamora for Defendant and Respondent.

-ooOoo-

This case arises from the termination by defendant Lake Don Pedro Community Services District (the district) of the employment of plaintiff Robert D. Kent, its general

manager, and plaintiff Kimberly R. Topie, its treasurer (collectively, plaintiffs or the plaintiffs). This is the third appeal in the litigation between the parties and, for the third time, we find prejudicial error by the trial court. In this round, the trial court dismissed the lawsuit on grounds of laches and subsequently awarded attorneys' fees to the district in an amount exceeding $175,000.

The laches ruling was erroneous. The court based its disposition on a finding that plaintiffs did nothing to bring the case to trial during a period of 32 months following the filing of the district's answer. There is no substantial evidence in the record to support this finding. The record does reflect other periods of delay that arguably were unreasonable, however, and the trial court may consider these on remand.

The attorneys' fees award also was erroneous. To award attorneys' fees in this case, it was necessary for the court to find that the lawsuit was "clearly frivolous and totally lacking in merit." (Gov. Code, § 54960.5.) The court's finding that this standard was satisfied was based primarily on its remarkable notion that plaintiffs *admitted* their lawsuit was clearly frivolous and totally lacking in merit when they signed the district's proposed ruling dismissing the case based on laches, indicating their approval of the order as to form. The ruling, being based on the procedural doctrine of laches, contained no consideration of the merits; and in any event, a plaintiff's approval of an adverse proposed ruling *as to form* obviously is not an admission that his or her case is meritless and frivolous. Were it otherwise, no attorney would ever approve an adverse ruling as to form. The court stated two other reasons for finding that plaintiffs admitted their case was clearly frivolous and totally lacking in merit, but these were similarly unsupported by the record.

The court's error was compounded by the fact that the district supplied no billing records and no task breakdown of the $175,000 attorneys' fees bill. The amount was supported only by a declaration stating the total hours for each attorney over the entire

2.

life of the case, along with each attorney's billing rate. Upon this record, it would be impossible for the court to find that the amount was reasonable.

On appeal, the district does not attempt to defend the trial court's reasoning on the attorneys' fee award. Instead, it tries to show that the evidence uncovered in the course of discovery, which was never considered by the trial court, would support a finding that the suit was clearly frivolous and totally lacking in merit. This attempt fails. The district also says it did not need to break down a bill of $175,000 covering many years. The attorneys' fee award will be reversed.

## FACTS AND PROCEDURAL HISTORY

Our two previous opinions in this litigation were filed in 2010. (*Kent v. Lake Don Pedro Community Services Dist.* (Apr. 30, 2010, F058131) [nonpub. opn.] (*Kent I*); *Kent v. Lake Don Pedro Community Services Dist.* (Dec. 30, 2010, F058926) [nonpub. opn.] (*Kent II*).) This account of the facts and procedural history is drawn in part from those opinions.

The case began as two separate lawsuits relating to the same set of facts. *Kent I* began with a petition for a writ of mandate filed by plaintiffs on October 9, 2008. (*Kent I, supra,* F058131, at p. 2.) As later amended, the petition alleged that Kent and Topie had each been employed by the district for about 15 years, Kent most recently as general manager and Topie most recently as treasurer. On June 30, 2008, according to the petition, at the end of a closed-session meeting of the district's board, Kent was given a "Letter of Censure" signed by each board member and detailing several reasons why the board was dissatisfied with him. (*Id.* at pp. 3-4.) On July 21, 2008, the board held two separate closed sessions, of which Kent and Topie did not receive notice, during which the board allegedly discussed criticisms of Kent and Topie and decided to fire them. On July 29, 2008, the board held an open session on one day's notice at which it voted to fire Kent and Topie with no discussion. (*Id*. at p. 3.) Later, Kent and Topie applied to the Employment Development Department (EDD) for unemployment benefits. The district

3.

filed opposition to plaintiffs' applications for benefits, alleging various forms of misconduct.  (*Id.* at p. 4.)

Plaintiffs' petition in *Kent I* alleged that the district's behavior violated the Ralph M. Brown Act (Gov. Code, § 54950 et seq.).[1]  The petition said the board must have heard complaints or charges against plaintiffs in the closed sessions without giving them 24 hours' notice and advising them of their right to have the complaints or charges heard in open session, in violation of section 54957.[2]  The petition also stated that board members must have had communications outside of authorized meetings—that is, in illegal serial meetings consisting of piecemeal conversations among board members—to develop an agreement to terminate plaintiffs, in violation of section 54952.2.[3]  (*Kent I, supra*, F058131, at pp. 4-5.)

---

[1]Subsequent statutory references are to the Government Code unless otherwise stated.

[2]Former section 54957, subdivision (b), reads as follows:

"(1)  Subject to paragraph (2), nothing contained in this chapter shall be construed to prevent the legislative body of a local agency from holding closed sessions during a regular or special meeting to consider the appointment, employment, evaluation of performance, discipline or dismissal of a public employee or to hear complaints or charges brought against the employee by another person or employee unless the employee requests a public session.

"(2)  As a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the employee shall be given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session.  If notice is not given, any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void."

Legislation amending section 54957 in 2013 made nonsubstantive changes to subdivision (b)(1).  (Stats. 2013, ch. 11, § 1.)  The preamendment language is quoted here.

[3]Section 54952.2, subdivision (b)(1), reads:

The district filed a demurrer to the amended petition. The trial court sustained the demurrer without leave to amend and dismissed the petition with prejudice. In its order, the court stated that the district was entitled to terminate plaintiffs in an open session and that nothing that happened in the closed sessions could establish liability because plaintiffs were not terminated during those meetings. It also found that the district's actions in the closed sessions must not have been a hearing of complaints or charges within the meaning of the Brown Act, but instead were only employee evaluations, to which the Brown Act's notice and advisement requirements do not apply. It ruled that the district's accusations in the unemployment insurance proceedings were irrelevant to the Brown Act claims. (*Kent I, supra*, F058131, at pp. 5-6.)

In *Kent II*, on January 15, 2009, Kent and Topie filed a complaint for damages based on the same facts as in *Kent I*. (*Kent II, supra*, F058926, at p. 2.) The complaint alleged wrongful termination, defamation, and a violation of due process rights under the federal Constitution, asserted via 42 United States Code section 1983. (*Kent II, supra*, at pp. 4-5.)

The district demurred. The trial court sustained the demurrer without leave to amend on August 26, 2009, and dismissed the complaint with prejudice on September 11, 2009. (*Kent II, supra*, F058926, at pp. 6-7.) It ruled that plaintiffs' wrongful-termination cause of action was nonstatutory and that, as a result, the district had immunity from it under the Government Claims Act (§ 810 et seq.). On the defamation claim, the court ruled that the complaint failed to recite the allegedly defamatory statements. On the due process claim, the court ruled that there was no cause of action because there are no due

---

"A majority of the members of a legislative body shall not, outside a meeting authorized by this chapter, use a series of communications of any kind, directly or through intermediaries, to discuss, deliberate, or take action on any item of business that is within the subject matter jurisdiction of the legislative body."

process requirements for termination of at-will employees. (*Kent II, supra,* F058926, at pp. 6-7.)

In the appeal in *Kent I*, this court ruled that the demurrer should have been overruled. (*Kent I, supra*, F058131, at p. 2.) Plaintiffs' amended petition adequately pleaded that the district either violated section 54957 by hearing complaints or charges against Kent and Topie in a closed session without providing the required notice and advisement, or violated section 54952.2 by discussing plaintiffs' terminations through an improper series of communications outside an authorized meeting. (*Kent I, supra*, at pp. 7-9.) Our holding applied only with respect to the judgment in favor of the district. We affirmed the trial court with respect to its judgment dismissing the petition with respect to the individual board member defendants, which was not challenged on appeal. (*Id.* at pp. 2, 14.)

In the appeal in *Kent II*, we held that the trial court erred by denying Kent and Topie leave to amend their complaint. It was reasonably possible that plaintiffs could cure defects in their complaint by: (1) alleging their wrongful-discharge cause of action in purely statutory terms, as a violation of Labor Code section 1102.5; (2) adding the words of the district's libelous statements or the substance of its slanderous statements to the defamation cause of action; and (3) alleging that their due process rights were infringed because they were stigmatized by a statement of false reasons for termination, which was made without notice and a hearing. (*Kent II, supra*, F058926, at pp. 10-11, 13-15.) We affirmed the judgment of dismissal as to other causes of action and as to an individual defendant. (*Id.* at p. 16.)

On remand, *Kent I* and *Kent II* were consolidated in the trial court for discovery purposes only. The consolidation order was issued on April 30, 2011. In *Kent II,* the damages action, Topie entered into a settlement agreement with the district for $75,000 on April 9, 2013. Plaintiffs' opening brief in this appeal states that Kent also settled *Kent II* two months later (though we find no documentation of this in the appellate record).

The settlements left only the Brown Act claims alleged in the petition in *Kent I*, for which the remedies sought were a declaration pursuant to section 54957, subdivision (b), that the termination decisions were null and void, as well as reinstatement with back pay.

The trial court conducted a hearing on May 20, 2013, to decide the mandate petition in *Kent I*. In their briefs for the hearing, the parties focused on the question of whether the evidence supported an inference that, at the closed sessions in which the performance of Kent and Topie was discussed, the board heard "specific complaints or charges brought against an employee by another person or employee" within the meaning of section 54957, subdivision (b)(2). It was undisputed that Kent and Topie were terminated without discussion at an open meeting, and that this open meeting followed a number of closed sessions in which the performance of Kent and Topie was discussed. It also was undisputed that, at the end of one of the closed sessions, Kent was presented with a previously prepared letter, signed by all the board members and detailing several specific grounds on which Kent was being censured. Plaintiffs presented evidence that, at the end of the open meeting in which they were terminated, an audience member asked a question about the terminations. Boardmember Punte responded by saying, "we're working through counsel .… [W]e've been working for a while, so we're solid." Further, after the terminations, Boardmember Gile said to Punte, "there are some tasks that need to be completed with this action [i.e., the terminations]. Are we going to do those tasks … have they been assigned?" Punte replied, "Yes, and I'd appreciate it if all the board would stick around because we'll all have something to do." Plaintiffs contended that these comments clearly implied that prior discussions among the board members had taken place regarding the grounds for plaintiffs' terminations, discussions that must have happened either in illegal serial meetings or during the closed sessions, which, in that case, were improperly noticed.

Plaintiffs also pointed to the deposition testimony of Boardmember Duste, who stated that district employees had told her of misconduct by Kent and Topie, including

7.

misuse of district credit cards and timekeeping irregularities. Duste ordered Kent to gather records relevant to these allegations. Duste and Punte examined the records and found evidence of misconduct. Allegations of misconduct, including the one about timekeeping, were also the stated basis of the district's opposition—submitted via counsel—to Kent's and Topie's unemployment claims.

Plaintiffs contended that these facts, though circumstantial, were sufficient to support a finding that the district did as the petition alleged: Someone made allegations against Kent and Topie, and the board heard these allegations either in closed sessions that did not comply with section 54957, subdivision (b), or through a series of piecemeal, unauthorized meetings in violation of section 54952.2, subdivision (b)(1).

In its opposition brief, the district argued that no violations could reasonably be found because there was no direct evidence of what the board heard in closed sessions and no direct evidence of serial meetings. In their depositions, Kent and Topie conceded they had no personal knowledge of serial meetings, the discussions that took place during the closed sessions, or any complaints made against them by other district employees. The district further argued that, to the extent the record showed the district terminated Kent and Topie because of misconduct, it revealed only that their performance was evaluated in closed sessions. Section 54957, subdivision (b), distinguishes between evaluating performance and hearing complaints or charges, and requires notice to employees and advisement of their right to an open session only if complaints or charges are heard. The evidence therefore did not show, the district contended, that the notice-and-advisement requirements were triggered. It also did not show that any serial meetings took place.

The district's brief also raised the issue of laches. First, the district asserted that any back-pay award should be offset, based on laches, because of delays following the filing of the district's answer on September 17, 2010. The district maintained that plaintiffs did not conduct any depositions between that time and November 2012 and

8.

"made no effort to bring this matter to trial" in the 31 months between the filing of the answer and the filing of the opposition brief. The district concluded that the action could even be dismissed entirely based on laches. Finally, the district argued that plaintiffs had an adequate remedy at law, which they were pursuing in *Kent II*, their damages action, and that the mandate case was barred by their election of a damages remedy in *Kent II*.

At the end of the hearing, the court took the matter under submission. On July 31, 2013, it issued a written ruling denying the petition on the ground that it was barred by the doctrine of laches. It stated:

> "In this case, even if the court were to find that [plaintiffs] promptly filed their petition, the court is persuaded that they have not prosecuted it with reasonable diligence. The District terminated [plaintiffs] on July 29, 2008. They filed their original petition for writ of mandate in October 2008. Nearly eight months later, the trial court entered its order sustaining Respondents' demurrer without leave to amend and dismissing the petition. In April 2010, the Court of Appeal reversed the trial court's order, and in August 2010, the Court issued its remittitur remanding the case to the trial court. Approximately one month later, in September 2010, the District filed its answer. From September 2010 until May 2013, a period of approximately 32 months, [plaintiffs] made no effort to bring this matter to trial. Since filing, without including the time this case was up on appeal, it has taken [plaintiffs] over 40 months to bring this matter to hearing on the merits. This represents and unreasonable period of delay.…
>
> "Prejudice to the District from the delay is manifest. [Plaintiffs] seek back pay and benefits from the period from their termination on July 29, 2008, to the present. By delaying resolution of this case, [plaintiffs] materially increased their claims for back salary and benefits. In addition, Kent's reinstatement would require the District either to discharge the current General Manager or to pay two employees for a single job."

Having decided the case on the basis of laches, the court stated that it was unnecessary to address the district's arguments that plaintiffs had adequate remedies at law and that plaintiffs' claims were barred by their election of a damages remedy in the other lawsuit. The court did not analyze the merits of the Brown Act claims. Judgment for the district was entered on August 30, 2013.

9.

The district filed a motion for attorneys' fees pursuant to section 54960.5 on October 18, 2013. That section provides that a trial court may award attorneys' fees to any prevailing plaintiff in a Brown Act case, but may award them to a prevailing defendant only under limited circumstances:

> "A court may award court costs and reasonable attorney fees to a defendant in any action brought pursuant to section 54960 or 54960.1 where the defendant has prevailed in a final determination of such action and the court finds that the action was clearly frivolous and totally lacking in merit."

The motion was not supported by counsel's billing records or any other form of documentation of the details of the services rendered by counsel. Instead, counsel submitted a declaration attesting to the total amount of fees generated over the entire five-year pendency of the litigation. The only supporting material was a half-page document listing each timekeeper who worked on the matter at the law firm, the hourly rates (which varied over the years) for each timekeeper, and the total billed by each timekeeper at each rate.

The trial court made the required finding that the action was clearly frivolous and totally lacking in merit, but it did not base this finding on any consideration of the merits of the case. Instead, it maintained that plaintiffs *admitted* their action was clearly frivolous and totally lacking in merit when their counsel signed the judgment dismissing the action under the words "APPROVED AS TO FORM." The court stated:

> "The court finds that [the district] was the prevailing party by reason that this action against it was dismissed with prejudice by the judgment entered in this case; that such judgment of dismissal with prejudice was approved by counsel for [plaintiffs]; that such agreement to judgment of dismissal with prejudice is an admission that the case was clearly frivolous and totally lacking in merit for purposes of Government Code § 54960.5; that [plaintiffs] abandoned their claims against individually named respondents on appeal of their dismissal in 2009 with prejudice after demurrer; that the [C]ourt of [A]ppeal held such claims waived and affirmed the dismissal with prejudice as to claims against the individually named respondents; that such failure, abandonment and waiver by [plaintiffs] of such claims constitutes admission that such claims were clearly frivolous and totally

10.

lacking in merit for purposes of Government Code § 54960.5; that petitioners' utter failure to diligently prosecute their claims against respondent district constitutes an admission that the claim against respondent district was clearly frivolous and totally lacking in merit for purposes of Government Code § 54960.5."

The district's brief in support of the motion did not include the contention that plaintiffs admitted their case was clearly frivolous and totally lacking in merit by means of their counsel's approval of the judgment as to form. The district argued only that (a) plaintiffs' claims against the individual board member defendants must have been clearly frivolous and totally lacking in merit because plaintiffs did not appeal from the dismissal of the petition as to those defendants; and (b) plaintiffs' claims against the district must have been clearly frivolous and totally lacking in merit because plaintiffs did not prosecute their claims diligently.

The court's order, which was drafted by counsel, ordered payment of the full amount of fees requested, $175,051.35, by check made payable to counsel.

### *DISCUSSION*

**I.      *Laches***

Plaintiffs challenge the trial court's ruling that the action is barred by laches. Laches is a doctrine according to which a court can, under some circumstances, refuse relief if delay on the part of the complaining party would render the granting of relief inequitable. (*Newport v. Hatton* (1924) 195 Cal. 132.) Laches requires unreasonable delay by the plaintiff plus either acquiescence by the plaintiff in the act complained of or prejudice to the defendant. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68 (*Johnson*); *Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 (*Conti*).) The delay can be either before or after the filing of the complaint or petition. (*Johnson, supra*, at p. 68.) Prejudice must be shown, not presumed. (*Conti, supra*, at

11.

pp. 359-362.) To support the policy of resolving controversies on their merits, the burden of proving laches is placed on the defendant. (*Id.* at p. 361.)[4]

"'Laches is a question of fact, on the evidence, and each case becomes largely a law unto itself. In other words, the matter is one which reposes in the sound discretion of the'" trial court. (*Brown v. Oxtoby* (1941) 45 Cal.App.2d 702, 707.) Consequently, a trial court's ruling on laches will be sustained on appeal if supported by substantial evidence, in the absence of manifest injustice. (*Johnson, supra*, 24 Cal.4th at p. 67; *Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624.) Cases are rare in which the appellate court found the trial court erred in concluding there was laches. (*Vernon, supra,* 178 Cal.App.3d at p. 725.)

The record discloses the following facts pertaining to the parties' pretrial activities. Plaintiffs were terminated by the district on July 29, 2008. On August 11 and 20, 2008, the district submitted documents to the Employment Development Department opposing plaintiffs' unemployment claims. The petition in *Kent I* was filed on October 9, 2008. Plaintiffs sent a settlement demand to the district on November 11, 2008, and received no reply. The complaint in *Kent II* was filed on January 15, 2009. The trial court sustained demurrers without leave to amend and dismissed both actions. (*Kent I, supra*, F058131, at p. 6; *Kent II, supra,* F058926, at p. 6.) We reversed both dismissals in part, in opinions filed on April 30, 2010 and December 31, 2010. (*Kent I, supra*, at pp. 1, 14; *Kent II, supra*, at pp. 1, 16.)

---

[4]One case, *Vernon Fire Fighters Assn. v. City of Vernon* (1986) 178 Cal.App.3d 710, 719 (*Vernon*), states that, "[i]f there is delay in prosecuting the mandamus action, the burden of showing that such delay is reasonable or excusable is on the petitioner." The Court of Appeal in that case cited *Conti, supra*, 1 Cal.3d at page 357, for this proposition. *Conti*, however, does not contain the proposition. It simply states that courts have held that laches is an affirmative defense, and the burden of proving it is on the defendant. (*Id.* at p. 361.) In any case, our holding does not depend on an allocation of the burden of proof. We express no opinion on the question of whether a defendant can make a showing that shifts a burden onto a plaintiff.

12.

On March 8, 2011, plaintiffs filed an amended complaint in *Kent II*. The district filed a demurrer and a motion to strike on April 8, 2011. On August 19, 2011, the trial court overruled the demurrer in part, sustained the demurrer in part with leave to amend, granted the motion to strike in part, and denied the motion to strike in part.

Plaintiffs moved to consolidate the two actions for all purposes. The trial court granted consolidation only for discovery purposes on April 30, 2011. The district filed an answer to the mandate petition on September 17, 2010.[5]

The district served deposition notices and requests for production of documents on October 26, 2011. Plaintiffs produced the documents and were deposed on December 5 and 12, 2011.

Plaintiffs served requests for production of documents on January 23, 2012. Respondents served responses on March 2, 2012.

In 2012, the parties filed a series of papers expressing disagreement about when the cases would be ready for trial. Plaintiffs filed a form called an At-Issue Memorandum for both cases on January 25, 2012. They marked spaces for "yes" where the form asked, "TRIAL SETTING REQUIRED?" and "PRETRIAL REQUESTED?" The district filed a counter memorandum on February 3, 2012, stating that trial setting was not required, pretrial was not requested, and "[t]he case is not at issue and should not be set for trial" because the two actions had not been consolidated for trial and the estate of a deceased board member (who had been a party to the damages action) had not been joined. On February 6, 2012, the district apparently changed its position, filing another counter memorandum in which it stated that trial setting was required and pretrial was requested in the mandate case but not the damages action. On February 7, 2012, plaintiffs responded with a letter to the court requesting a case management conference

---

[5]The parties have not cited any place in the appellate record indicating when the answer was filed in the damages action.

for both cases. Plaintiffs filed another at issue memorandum for the mandate case on March 12, 2012, again stating that trial setting was required. On March 19, 2012, plaintiffs filed a pretrial conference statement for the mandate case in which they asserted that the case would be ready for trial within six months. The district filed its pretrial conference statement on March 21, 2012, in which it denied that that proceeding was really a pretrial conference. The district returned to its prior position that "trial setting at this time is not appropriate." The district stated that discovery was incomplete, and summary judgment motions were anticipated. In the district's view, the case would be ready for trial by January 14, 2013.

A pretrial conference took place on March 26, 2012. The court set another hearing for June 25, 2012, with the parties to hold a further settlement conference in the interim. Plaintiffs filed a case management statement for both matters on June 18, 2012. Plaintiffs indicated that the parties had agreed to participate in mediation and that they intended to complete their discovery by August 2012. The district also filed a case management statement on June 18, 2012. It requested a further status conference in 120 days to allow for discovery and mediation.

The court continued the June 25 case management hearing to August 27, 2012. For that hearing, the district filed a case management statement on August 14, 2012, requesting a further status conference in 120 days to allow for "additional discovery and mediation." On August 16, 2012, the parties participated in a mediation session. On August 20, 2012, plaintiffs served a case management statement in which they stated that all their anticipated discovery would be completed by November 15, 2012, and they were requesting trial no later than March 1, 2013. At the case management hearing, the court set a briefing schedule, with briefs due in December 2012 and January 2013, but did not set a trial date. Further depositions of plaintiffs were conducted in July and November 2012.

14.

Plaintiffs served deposition notices with document production requests on September 27, 2012. District board members were deposed on November 7, 8 and 9, 2012. A discovery dispute arose around this time. The district objected to some of plaintiffs' document requests, relying on attorney-client privilege among other things, but did not produce a privilege log. Plaintiffs also encountered difficulty in obtaining documents that an attorney for the district in the damages action had subpoenaed from the law firm representing the district in the mandate case. Plaintiffs' counsel informed the district that, until the discovery dispute was resolved, plaintiffs would not file an opening brief for the trial in the mandate action in accordance with the briefing schedule set at the last case management hearing.

In their next case management statement, filed on November 16, 2012, plaintiffs stated that discovery would be complete by January 15, 2013, and requested trial by April 1, 2013. They referred to the discovery dispute and stated that they anticipated a need to file motions to compel discovery.

On December 15, 2012, plaintiffs did not file an opening brief as required by the order issued after the August 27, 2012, case management hearing. For this reason, the district filed a motion to dismiss on January 28, 2013. The trial court subsequently allowed the motion to dismiss to be withdrawn, but ordered plaintiffs to pay the district a sanction of $1,800 for attorneys' fees and ordered plaintiffs to file an opening brief by March 15, 2013.

After this, the damages action settled and the mandate case proceeded to hearing, as we have already described.

The parties now dispute whether the record supports the finding of unreasonable delay by plaintiffs in the prosecution of the action. They also dispute whether the record supports the finding of prejudice. We begin with unreasonable delay.

The trial court found that plaintiffs caused unreasonable delay because they "made no effort to bring this matter to trial" for a period of 32 months from September 2010

15.

(when the district filed its answer following the appellate reversal in *Kent I*) to May 2013 (when the hearing took place).[6] There is no substantial evidence in support of the finding that plaintiffs made no effort to bring the matter to trial between the filing of the answer and the date of the hearing. During that time, plaintiffs conducted discovery, responded to discovery requests, resolved discovery disputes, engaged in mediation, and made multiple requests for trial dates. More than once, the district responded to plaintiffs' requests for the setting of a trial date by advising the court that the matter was not ready for trial setting.

Although the ground stated by the trial court for its determination is not supported by the record, it does not necessarily follow that an unreasonable delay by plaintiffs cannot be demonstrated from the record. Within the period between the filing of the answer and the hearing, there were shorter delays that could possibly be shown to be unreasonable. For instance, as the district points out, plaintiffs first served deposition notices in September 2012, two years after the filing of the answer. The trial court may determine on remand whether laches can be found on such alternative grounds as these. The trial court can also consider, on remand, the other grounds the district advanced for judgment in its favor, upon which the court did not rule previously.

Turning to prejudice, we conclude that the question will have to be reconsidered on remand, if the trial court again rests its decision on laches. The court's view was that the district was prejudiced because, had the matter been resolved sooner, the claims for back pay would have been less, and reinstatement of Kent would necessitate terminating a replacement who had been hired, or paying two employees for the same job. Forms of

---

[6]The court also found that the hearing did not happen for 40 months from the time of filing, excluding the time when the appeal was pending. To the extent that this is another finding of unreasonable delay, it depends logically on the finding that plaintiffs did nothing to bring the matter to trial for 32 of those 40 months. Consequently, we will not analyze it separately.

16.

prejudice comparable to these have been recognized as sufficient in the context of laches in multiple cases. (*Johnson, supra*, 24 Cal.4th at p. 69; *Conti, supra*, 1 Cal.3d at p. 360; *Vernon, supra*, 178 Cal.App.3d at pp. 717, 726.) As we have said, however, the record does not support the court's finding that plaintiffs did nothing to bring the case to trial in the period from the filing of the answer to the hearing. If the court finds laches based on narrower grounds or a shorter delay, the nature and quantity of evidence of prejudice may be different.

The district contends that, even if the record does not support a finding of laches, the judgment should be affirmed because, in its order awarding attorneys' fees, the trial court found that the lawsuit was clearly frivolous and totally lacking in merit. As we will explain, the attorneys' fees award and the findings on which it was based were abuses of the trial court's discretion.

## II.     *Attorneys' fees*

Plaintiffs contend that the award of attorneys' fees to the district was erroneous. A trial court has authority to award attorneys' fees to a defendant in a Brown Act case only if it "finds that the action was clearly frivolous and totally lacking in merit." (§ 54960.5.) This is a difficult standard to satisfy. In the similar context of an award of attorneys' fees to a prevailing defendant under the Public Records Act (§ 6250 et seq.), the Court of Appeal recently described the "clearly frivolous" standard in the following way:

> "[A]ny sanction for prosecuting a frivolous [case] 'should be used most sparingly to deter only the most egregious conduct.' [Citation.] Ultimately … '[a case] may be deemed frivolous only when prosecuted for an improper motive—e.g., to harass the [defendant] or for purpose of delay—*or* when lacking any merit—i.e., when any reasonable attorney would agree the appeal is totally without merit.' [Citation.]" (*Bartoli v. City of Sebastopol* (2015) 233 Cal.App.4th 353, 368.)

An award of attorneys' fees under the Brown Act is reviewed for abuse of discretion (*Boyle v. City of Redondo Beach* (1999) 70 Cal.App.4th 1109, 1120), but of course an award to a prevailing defendant is within the court's discretion only if its

17.

finding that the action was clearly frivolous and totally lacking in merit is supported by the record and within the bounds of reason. As we will explain, the record does not support a finding that the district's fee motion satisfied the stringent applicable standard.

In defense of the trial court's first reason for finding plaintiffs' case clearly frivolous and totally lacking in merit—that plaintiffs admitted as much when they approved the judgment as to form—little can be said. With good reason, the district never made this argument in the trial court and says nothing in defense of it now. No competent attorney approves an adverse judgment or order as to form with the understanding that, by doing so, he or she makes a judicial admission that his or her case is clearly frivolous and totally lacking in merit. The trial court's reliance on this ground was well outside the bounds of reason.

The court's other two grounds do not fare much better. First, the court stated that plaintiffs conceded the clear frivolity and total meritlessness of their case by not appealing from the dismissal of the individual defendants. No such concession was implied by the lack of an appeal. In general, there are many reasons for not pursuing an appeal that have nothing to do with the merits of a case. One such reason is revealed by the record in this case. As we mentioned in our prior opinion, one ground advanced in the trial court in support of the demurrer was that the Brown Act provided remedies that ran against the governmental entity only, not the individual board members. Plaintiffs argued in response that the demurrer should be sustained as to the individual defendants only with leave to amend, since the petition could be amended to add causes of action not based on the Brown Act. (*Kent I, supra*, F058131, at p. 14.) In fact, plaintiffs ended up filing a separate action, *Kent II*, alleging non-Brown Act causes of action against the individual defendants. Plaintiffs' decision not to appeal from the dismissal of the individual defendants from *Kent I* was not based on plaintiffs' belief that their claims against those defendants were frivolous or meritless.

18.

The trial court's final reason for finding the case clearly frivolous and totally lacking in merit was that plaintiffs admitted this was so by failing to prosecute the action diligently. Again, the finding of an admission is not supported by substantial evidence and is not within the bounds of reason. Assuming plaintiffs did lack diligence, we do not see how this would amount to an admission that the case was clearly frivolous and totally without merit. Many factors unrelated to the merits of a case can contribute to an unreasonable and unexcused delay, including lack of funds and distraction of parties or counsel by other matters.

In sum, the court's order found that plaintiffs' action was clearly frivolous and totally without merit even though the court never analyzed the merits of the case. Instead, it attributed adverse admissions to plaintiffs based on facts that simply did not imply such admissions. This was an abuse of discretion.

In its appellate brief, the district asks us to affirm the attorneys' fees award based on an analysis of the merits of the case. It is essentially the same as the merits analysis the district presented to the trial court, recharacterized as an argument that plaintiffs' position is not just wrong but frivolous. As we will explain, this analysis depends on conclusions that an attorney could reasonably dispute. It follows that the district's analysis cannot show that plaintiffs' lawsuit was clearly frivolous and totally without merit.

The district says plaintiffs admitted in their depositions that they had no personal knowledge of what happened in closed sessions and no personal knowledge of any serial meetings. It maintains that this lack of knowledge contradicts plaintiffs' verified petition, which states (under oath, since it is verified) that the district's board either heard complaints or charges in closed sessions or discussed plaintiffs' terminations in serial meetings. The district argues that, absent direct evidence of the hearing of complaints or charges in the closed sessions or of serial meetings, the evidence shows only that employee evaluations were conducted in the closed sessions. Employee evaluations, the

district argues, are permitted in closed session by the Brown Act without notice to the employee or advisement of the right to an open meeting. Because plaintiffs never had any personal knowledge of the alleged violations and never obtained documents or witness testimony directly proving them, their case never had any potential, at the outset or by the time of the hearing, to show anything more than proper employee evaluations. Therefore, the district argues, the case was clearly frivolous and totally lacking in merit.

As a preliminary point, plaintiffs' lack of personal knowledge does not contradict the verified petition. The allegations in the petition were made on information and belief. It is evident that those allegations were based on inferences from the district's actions, inferences that the district must have heard complaints or charges in closed session, or had discussions in serial meetings, since it made detailed accusations of misconduct and must have developed these at some point. There is nothing improper about this, and it does not show that the lawsuit was frivolous.

We turn next to the distinction between the hearing of complaints and charges (to which the section 54957 requirements at issue apply) and the conducting of employee evaluations and making of employment decisions (to which they do not). We discussed this distinction in our prior opinion (*Kent I, supra,* F058131, at pp. 10-12) and discussed it briefly above. Again, section 54957, subdivision (b)(1), makes a distinction between "consider[ing] the appointment, employment, evaluation of performance, discipline or dismissal of a public employee" and "hear[ing] complaints or charges brought against the employee by another person or employee." Then, as to the latter activity only, section 54957, subdivision (b)(2), requires that, if it is to be carried out in closed session, the employee must be notified and advised of his or her right to an open session instead.

The distinction between the two kinds of activities—evaluating performance versus hearing complaints—is difficult to apply in practice. If the board of a public agency undertakes to evaluate an employee's performance, and in the course of doing so it is told by "another person or employee" (§ 54957, subd. (b)(1))—i.e., anyone—of

20.

misconduct or other bad performance, has the board then heard "complaints or charges" (§ 54957, subd. (b)(1) & (2))? If so, would negative performance evaluations not typically also be hearings of complaints or charges?

This problem has led courts to tread cautiously in this area, as cases discussed in *Kent I* indicate. (*Kent I, supra,* F058131, at pp. 10-12.) In *Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, the Court of Appeal held that, although a school board dismissed teachers after reading allegations of misconduct in closed session, it did not conduct a hearing of complaints or charges because the allegations of misconduct had first been presented to the employees in earlier proceedings not involving the board. (*Id.* at pp. 96-100.) Similarly, in *Kolter v. Commission on Professional Competence of Los Angeles Unified School Dist.* (2009) 170 Cal.App.4th 1346, charges against a teacher were discussed in closed session, and the board decided to initiate termination proceedings. Later, the charges were made public at an open meeting. The Court of Appeal held that there was no *hearing* of the charges at the closed session because those charges were heard at the subsequent open session. (*Id.* at p. 1352.) In *Moreno v. City of King* (2005) 127 Cal.App.4th 17, the city council was given a memorandum in closed session in which accusations of an employee's misconduct were contained; the council discussed the accusations, and several days later the employee was fired by the city manager. There were no prior or subsequent proceedings in which the accusations were heard. The Court of Appeal affirmed the trial court's holding that the council violated the Brown Act by hearing complaints or charges in closed session without the required notice and advisement to the employee. It rejected that contention that there was a performance evaluation but not a hearing of complaints or charges. (*Moreno, supra,* at pp. 21-23, 28-29.)

With this legal background, plaintiffs' counsel here could reasonably believe plaintiffs had a viable case based on circumstantial evidence. The performance of Kent and Topie was discussed in closed sessions; at the end of one of these, Kent was censured

21.

in writing. Kent and Topie were terminated without discussion at an open meeting, and, at the end of that meeting, board members made remarks indicating that the board had been working on the issue of the terminations for some time. Board members received and investigated other employees' claims of misconduct by Kent and Topie. The district opposed Kent's and Topie's unemployment claims on grounds of misconduct. These facts support the conclusion that there was a reasonable possibility a finder of fact would infer under the preponderance standard that the board heard complaints or charges against Kent and Topie in closed sessions, unless it instead developed the grounds for their terminations in serial meetings.

In sum, on the record before us, a reasonable attorney could conclude that plaintiffs had a colorable case of a Brown Act violation, and that there was enough evidence for a reasonable finder of fact to find in plaintiffs' favor. Under these circumstances, to award attorneys' fees under the "clearly frivolous and totally lacking in merit" standard (§ 54960.5) would conflict with the fee provision's goal of encouraging private enforcement of the Brown Act. (*Common Cause v. Stirling* (1981) 119 Cal.App.3d 658, 663.)

Finally, although the point need not be made for purposes of our disposition, it is worthwhile for the guidance of the court and parties to note that the documentation the district submitted to the trial court was not adequate to establish the fees reasonably incurred. To serve as the basis of a reasonable award of statutory attorneys' fees, a lodestar figure must be "based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney … involved in the presentation of the case.' [Citation.]" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132.) To determine what amount of fees is reasonable, "trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." (*Ibid.*) The district did not submit any detailed billing records. Instead, it presented lump sums for each attorney for the entire multi-

22.

year case, along with each attorney's billing rate. We do not see how the trial court could have determined whether or not the fees claimed were reasonable when the services performed by each attorney were not even described, let alone broken down by date and task.

In conclusion, it is specifically noted that our ruling is based solely upon, and limited to, the record before us. As long as it remains consistent with this opinion, we do not intend to limit the trial court as to any conclusions it may reach.

### ***DISPOSITION***

The judgment and the award of attorneys' fees are reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court may reconsider the issue of laches on grounds other than those rejected herein, as well as the remaining issues raised by the parties at the hearing on May 20, 2013, but not addressed previously by the trial court. Costs on appeal are awarded to plaintiffs.

_____

Smith, J.

WE CONCUR:

_____

Cornell, Acting P.J.

_____

Poochigian, J.