Filed 11/23/21  Golden State Pharmaceuticals v. Yee CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| GOLDEN STATE PHARMACEUTICALS LLC, | B308625 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC720093) |
| v. | |
| BETTY T. YEE, CALIFORNIA STATE CONTROLLER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Reversed.

Xavier Becerra and Rob Bonta, Attorneys General, Thomas S. Patterson, Senior Assistant Attorney General, Mark R. Beckington and Lara Haddad, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of George A. Shohet, George A. Shohet and Teri Zimon, for Plaintiff and Respondent.

1

# I.    INTRODUCTION

Golden State Pharmaceuticals LLC (Golden State), a cancelled limited liability corporation, filed claims with the California State Controller (the Controller) for money the Controller held under the California Unclaimed Property Law (UPL).  When the Controller failed to act on the claims, Golden State brought a civil action under the UPL to recover the money.  The trial court granted Golden State's motion for summary judgment, awarding it $121,989.13.  The Controller appeals.  We reverse.

# II.    BACKGROUND[1]

## A.    *Golden State*

Marisa Schermbeck Nelson worked as a personal assistant to Doctor Munir Uwaydah from 2000 to June 2010.  Uwaydah owned and controlled several companies that were held in other persons' names to hide his ownership and control from creditors, insurance investigators, and government agencies.  During Nelson's employment with Uwaydah, Uwaydah directed her to put her name as owner, officer, or manager of various corporations or limited liability companies even though he owned and solely controlled the operation of those entities.

---

[1]    "Consistent with our standard of review of orders granting summary judgment, we will recite the historical facts in the light most favorable to . . . the nonmoving party.  [Citation.]"  (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 81.)

On March 27, 2007, Golden State filed its Articles of Organization with the California Secretary of State. It was to be managed by one manager. Uwaydah owned Golden State yet directed Nelson to put her name as Golden State's owner. Nelson also was designated as the owner of a bank account associated with Golden State. At Uwaydah's direction and until her employment with Uwaydah ended in June 2010, Nelson moved money in and out of the Golden State bank account.

On July 9, 2009, Golden State informed the Secretary of State that Holger Blank was its sole manager. On October 1, 2010, Blank filed Golden State's Certificate of Cancellation with the Secretary of State. On December 16, 2016, Blank authorized Janek Hunt to act as Golden State's Custodian of Records in winding up Golden State's affairs.

On March 16, 2017, the Los Angeles County District Attorney filed a complaint against Nelson and others for, among other crimes, conspiring to commit insurance fraud in violation of Penal Code sections 182, subdivision (a)(1) and 550, subdivision (a)(6). The complaint alleged the insurance fraud was committed between November 15, 2004, and February 20, 2015, and was based, in part, on the operation of Golden State. On July 26, 2017, Nelson pleaded guilty to that charge as stated in a third amended felony complaint. As part of her plea, Nelson testified that Uwaydah, who "was the true owner of Golden State . . . created a list of prescription medications and insisted that each patient seen at Frontline [a medical clinic also controlled by Uwaydah] be prescribed all medications on the list or at least a certain dollar amount . . . . The billing reflected that each patient was essentially prescribed the same medication." She added that "[p]rescriptions would often be returned to the clinic or pharmacy

and these medications would be relabeled with different patient names and the insurance company would be re-billed for the same medication. . . . [¶] . . . [¶] Pharmaceutical billing became a lucrative part of the overall scheme." In a declaration in support of the Controller's opposition to Golden State's motion for summary judgment, Nelson stated that to her knowledge, Golden State operated under a fraudulent scheme from its founding to her departure from Uwaydah's employment in June 2010.

On January 17, 2019, a Criminal Grand Jury of Riverside County indicted Uwaydah, Hunt, and others for, among other crimes, conspiring to knowingly make false or fraudulent claims for payment of health care benefits in violation of Penal Code sections 182, subdivision (a)(1) and 550, subdivision (a)(6). The indictment alleged the conduct at issue occurred between September 1, 2015, through and including September 1, 2018, and was based, in part, on the operation of Golden State.

B.     *The Insurance Claims*

Between May 2015 and June 2016, the Controller received 37 submissions from insurance companies and other entities for insurance claim benefits, insurance claim reimbursements, and workers' compensation benefits that identified Golden State as the owner of the submission proceeds. On January 17, 2017, the Controller informed Golden State by letter that it had received the 37 submissions and explained how Golden State could file a claim for the money under the UPL.

On March 9, 2017, Hunt, on behalf of Golden State, filed claim forms with the Controller concerning the 37 submissions. From October 2017 to February 2018, Zachary Peccianti, the

Controller's Bureau Chief, communicated with Hunt and Steven Gardner, Golden State's attorney, concerning documents necessary to "complete the claim."[2]

On February 2, 2018, Golden State provided the Controller with the final requested document and Peccianti e-mailed Gardner that the Controller would evaluate Golden State's claim and advise it of the outcome.  On February 7, 2018, Peccianti e-mailed Gardner:  "It appears that the company or the reported owner of the property may be/ ha[s] been associated with some litigation.  We allow our legal office to make the final determination in cases such as this.  We are routing to their office to make that determination.  If the claim is approved the claimant may authorize payment to be sent to your address.  No form is needed, just communication from Mr. Hunt stating these are his wishes."

Thereafter, Gardner made several unsuccessful attempts to find out the basis for the Controller's hold on Golden State's claims.  On March 26, 2018, Gardner e-mailed Peccianti stating that he had contacted the Controller's legal office and spoken with the receptionist who told him that the office had a lot of cases and "'[w]e don't know who it will be assigned to or when we will get back to you.'"  Gardner stated that based on the communications between Peccianti and himself and Hunt, he deemed Golden State's claims to have been completed on February 2, 2018.  He demanded that Peccianti immediately identify the problematic litigation that was delaying the processing of Golden State's claims.  The Controller did not respond to Gardner's e-mail.

---

[2]     The Controller treated all claims on behalf of Golden State as a single claim.

5

On August 30, 2018, Golden State filed its complaint against the Controller to recover its claimed money under the UPL.  It moved for summary judgment.  The trial court granted the motion and, on August 3, 2019, entered judgment for Golden State in the amount of $121,989.13.  The Controller timely filed a notice of appeal.

## III.   DISCUSSION

A.    *Standard of Review*

Our review of the trial court's ruling on a motion for summary judgment is governed by well-established principles. "'"A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); see also *id.*, § 437c, subd. (f) [summary adjudication of issues].)"'"" (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.)  "We review the trial court's decision [on a summary judgment motion] de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476; *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96–97 [suggesting de novo review of the applicability of equitable tolling]; see *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67–68 [holding the court of appeal erred by reviewing summary judgment granted on the equitable defense of laches under the "deferential abuse of discretion standard"].)

6

"In moving for summary judgment, a 'plaintiff . . . has met' his 'burden of showing that there is no defense to a cause of action if' he 'has proved each element of the cause of action entitling' him 'to judgment on that cause of action. Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The defendant . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (o)(1).[3])" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

B.     *UPL*

"""The [UPL] governs the state's handling and disposition, generally through the controller, of property such as bank accounts and securities, held by entities such as banks, brokerage firms, and insurance companies, the owners of which have not acknowledged or claimed their interest in for several years, generally three. Such property by statute escheats, nonpermanently, and the holder must transfer it to the controller.'" [Citations.] "'The [UPL] is not a permanent or 'true' escheat statute. Instead, it gives the state custody and use of unclaimed property until such time as the owner claims it. Its dual objectives are 'to protect unknown owners by locating them and restoring their property to them and to give the state rather

---

[3]     All further statutory citations are to the Code of Civil Procedure unless otherwise noted.

7

than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed.""" [Citation.] Section 1540 sets forth the procedures for the filing and processing of claims for escheated property." (*Casiopea Bovet, LLC v. Chiang* (2017) 12 Cal.App.5th 656, 661–662, fn. omitted.)

Under section 1540, a person who claims to be the owner of property delivered to the Controller under the UPL may file a claim for the property on a form the Controller prescribes. (§ 1540, subd. (a).) The Controller must consider a claim within 180 days after it was filed to determine if the claimant is the owner and provide written notice to the claimant if it denies the claim in whole or in part. (§ 1540, subd. (b).) For purposes of filing a claim under section 1540, an "owner" is "the person[4] who had legal right to the property before its escheat . . . ." (§ 1540, subd. (d).)

If the Controller denies a claim filed under the UPL or fails to make a decision on a claim within 180 days after the claim was filed, the claimant may file a lawsuit to establish the claimant's claim. (§ 1541.) Such a lawsuit must be brought within 90 days after the Controller's decision denying the claim or within 270 days from the date the claim was filed if the Controller fails to make a decision. (*Ibid.*)

---

[4]     "'Person' means any individual, business association, government or governmental subdivision or agency, two or more persons having a joint or common interest, or any other legal or commercial entity, whether that person is acting in his or her own right or in a representative or fiduciary capacity." (§ 1501, subd. (h).)

C.    *Analysis*

    1.    <u>Statute of Limitations</u>

The trial court impliedly ruled that Golden State did not file its complaint within the time prescribed in section 1541, but expressly ruled that the statute of limitations was equitably tolled.  The Controller contends that the court erred in applying equitable tolling because Golden State failed to provide the Controller with notice of its intent to litigate and failed to conduct itself reasonably and in good faith.  We disagree.

Golden State filed its claims under the UPL on March 9, 2017.  The Controller did not deny those claims and provide written notice to Golden State within 180 days of March 9, 2017.  Accordingly, section 1541 required Golden State to file its complaint within 270 days of March 9, 2017—i.e., by December 4, 2017.  Instead, Golden State filed its complaint on August 30, 2018, over 270 days after March 9, 2017, and outside the statute of limitations.  Thus, for Golden State to proceed with its time-barred claim, it had to satisfy the elements of equitable tolling.  (See *Turnacliff v. Westly* (N.D. Cal. July 6, 2006) 2006 WL 1867721 *2.)

"Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness. [Citations.]  [The California Supreme Court] has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.  [Citations.]"  (*Lantzy v.*

*Centex Homes* (2003) 31 Cal.4th 363, 370.) "Equitable tolling has three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' [Citation.]" (*Structural Steel Fabricators, Inc. v. City of Orange* (1995) 40 Cal.App.4th 459, 464–465, fn. omitted.)

Here, as the trial court found, Golden State demonstrated all three elements of equitable tolling. First, Golden State gave the Controller timely notice of their claims when it filed its March 9, 2017, claims. Second, in opposition to Golden State's summary judgment motion, the Controller argued it "would be prejudiced by tolling the statute of limitations," but did not explain how or adduce facts supporting its prejudice claim. It does not argue on appeal that it would be prejudiced.

Third, Golden State conducted itself reasonably and in good faith in pursuing its claims. In October 2017, within the statute of limitations, Peccianti contacted Hunt about documents the Controller needed to consider Golden State's claims. Thereafter, both inside and outside the statute of limitations, Hunt and Gardner communicated with Peccianti about those documents. After Peccianti informed Gardner that Golden State's claims had been transferred to the Controller's legal office because the claims or their purported owner might be or might have been involved in litigation, Gardner made several unsuccessful attempts to clarify the basis for the Controller's hold on the claims. At the end of March 2018, Gardner e-mailed Peccianti demanding that he immediately identify the problematic litigation that was delaying the processing of Golden State's claims. The Controller did not respond to Gardner's e-mail. In August 2018, Golden State filed its complaint against the Controller to recover its claimed money under the UPL. Based on

these undisputed facts, the trial court did not err in ruling that the Controller failed to show a triable issue of material fact as to its statute of limitations affirmative defense.

> 2. The Controller Demonstrated a Triable Issue of Material Fact Concerning Golden State's Ownership of the Claimed Money

The Controller concedes that the insurance companies and other entities that delivered the contested money to the Controller listed Golden State as the owner of that money.[5] It argues, however, that the trial court erred in failing to find it did not demonstrate a triable issue of material fact about whether Golden State had a legal right to that property. We agree.

There is a triable issue of material fact as to whether Golden State was formed and operated as part of a criminal conspiracy to commit insurance fraud. Nelson, who was designated for some period as Golden State's sole manager, pleaded guilty to conspiring to commit insurance fraud in connection with Golden State's operation. Nelson testified as part of her plea that Uwaydah had directed that all patients seen by a clinic he controlled be prescribed all medications on a list. She also testified that prescriptions that were returned to Golden State were relabeled with a different patient name and then an insurance company would be rebilled for the prescription. And, she declared that based on her knowledge, Golden State operated

---

[5] We construe this as a concession that Golden State met its initial burden of demonstrating the elements of its entitlement under the UPL. Accordingly, we need not decide whether the court misapplied Evidence Code section 631.

11

under a fraudulent scheme from its founding to her departure from Uwaydah's employment in June 2010. Uwaydah, Golden State's owner, has been indicted for conspiracy to knowingly make false or fraudulent claims for payment of health care benefits concerning Golden State's operation. Finally, Golden State filed a certificate of cancellation on October 1, 2010. This evidence supported an inference that a criminal conspiracy generated the insurance payments that were the submissions to the Controller. Specifically, a reasonable fact finder could conclude that a significant portion of the checks submitted to the Controller were reimbursements from insurance companies and other entities for claims filed by Golden State before October 1, 2010, when it filed its certificate of cancellation. Thus, there was a question of material fact whether Golden State owned those check proceeds as "the person who had legal right to the property before its escheat . . . ." (§ 1540, subd. (d) [it would have had no legal right to money criminally obtained].)

## IV.   DISPOSITION

The judgment is reversed.  The Controller is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


I concur:


MOOR, J.

Golden State Pharmaceuticals LLC v. Betty T. Yee, as State
Controller
B308625


BAKER, Acting P. J., Concurring


I similarly conclude reversal is required in this appeal,
albeit by a different analytical route.

"Equitable tolling is a 'judicially created, nonstatutory
doctrine' that ' "suspend[s] or extend[s] a statute of limitations as
necessary to ensure fundamental practicality and fairness." '
[Citation.] The doctrine applies 'occasionally and in special
situations' to 'soften the harsh impact of technical rules which
might otherwise prevent a good faith litigant from having a day
in court.' [Citation.] Courts draw authority to toll a filing
deadline from their inherent equitable powers—not from what
the Legislature has declared in any particular statute. [Citation.]
For that reason, we presume that statutory deadlines are subject
to equitable tolling. [Citation.] [¶] But that presumption can be
overcome. Equitable tolling, [our Supreme Court has] . . . also
observed, 'is not immune' from the operation of statutes.
[Citation.] A court may conclude that explicit statutory language
or a manifest policy underlying a statute simply cannot be
reconciled with permitting equitable tolling, 'even in the absence
of an explicit prohibition.' [Citation.]"[1] (*Saint Francis Memorial*

---

[1] Equitable estoppel is not the same as equitable tolling. The
doctrine of equitable estoppel is ""founded on concepts of equity

1

*Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 719-720 (*Saint Francis*).)

The trial court relied on Golden State Pharmaceuticals LLC's (Golden State's) equitable tolling argument to conclude the company's lawsuit need not be dismissed. I believe that was a mistake because equitable tolling is unavailable in a case like this.

Code of Civil Procedure sections 1540 (section 1540) and 1541 (section 1541) establish a procedure for owners of unclaimed property held by the State to submit a claim for the property's return. Critically for our purposes, the statutory scheme is obviously designed to ensure such claims are resolved promptly. Specifically, section 1540 requires the Controller to consider a submitted claim within 180 days of its submission (§ 1540, subd. (b)) and section 1541 authorizes a claimant to file a civil action if the Controller does not decide the claim within that 180-day time

---

and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."' [Citation.]" (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1072.)

Plaintiff and respondent Golden State Pharmaceuticals LLC makes only an equitable tolling argument in this case. So the question of whether equitable estoppel might apply in another case with different facts is a question I leave for another day.

frame.  Importantly, however, section 1541 requires that any such civil action must be filed "within 270 days from the filing of the claim if the Controller fails to make a decision."  (§ 1541.)

Here, the Controller did not make a decision within 180 days but Golden State failed to bring suit (the statutory mechanism provided to incentivize prompt claim resolution) within the statutorily provided 270-day timeframe.  That failure means the lawsuit must be dismissed.  In the words of our Supreme Court in *Saint Francis*, the policy of ensuring prompt claim resolution that manifestly underlies sections 1540 and 1541 "simply cannot be reconciled with" the delays tolerated by equitable tolling.  (*Saint Francis*, *supra*, 9 Cal.5th at 720; see also *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 371, 374.)


BAKER, Acting P. J.


3